Linda **NEIDER** et al.

v.

**CHRYSLER CORPORATION**

v.

. James R. **LANE.**

Civ. A. No. 69-751.

United States District Court,
E. D. Pennsylvania.

June 29, 1973.

Gordon W. Gerber, Philadelphia, Pa., for plaintiffs.

Harry A. Short, Jr., James Lewis Griffith, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

This is an action for damages against Chrysler Corporation arising out of the death of a father and injuries to two of his minor children from an accident which involved a Plymouth GTX manufactured by defendant, Chrysler Corporation. The plaintiffs are Linda and Cynthia Neider, the minor children, and Geraldine Neider, the mother individually and as parent and guardian of the minor children as well as Administratrix of the Estate of John Neider, her deceased husband. Chrysler Corporation as a third-party plaintiff has joined as a third-party defendant James R. Lane allegedly the driver of the Plymouth GTX.

Plaintiffs allege generally that on April 7, 1968 at about 6:28 P.M. on U.S. 1 about two and a half miles east of Oxford, Pennsylvania, while John Neider was driving three of his children and a neighbor's child home from a picnic, an accident occurred. A 1968 Plymouth GTX, manufactured by defendant Chrysler Corporation, traveling in excess of 120 mph went out of control, crossed onto the wrong side of the road, and struck the Neider vehicle head on. As a result of the accident, John Neider, one of the Neider children, and the neighbor's child were killed. The deceased Neider child and the neighbor's child are not plaintiffs in this suit.

Paul Hagy, Clarence Holbrook, and James Lane, the owner of the GTX, were all in the GTX at the time of the accident; all three received injuries of varying degrees. None seek compensation against Chrysler in this action.

The Neiders base their claim on theories of negligence and products liability. The plaintiffs contend that the auto was unreasonably dangerous because it was uncontrollable on public roads at speeds it was capable of achieving. Plaintiffs also claim as defects in the auto that Chrysler failed to provide adequate features for high-speed stability because it put a high-powered engine in an automobile not designed to be safe with such an engine; that the auto body did not have necessary high-speed aerodynamic design, an adequate suspension system, or an adequate steering mechanism, and that Chrysler failed to incorporate into the design of the car certain aerodynamic devices, spoilers and wings, which improve the aerodynamic characteristics of the car, increase traction, and give greater stability.

The failure to provide the safety features, the plaintiffs contended, created two problems. First, a driver not experienced at high-speed driving would tend to oversteer the car and lose control because at high speeds the car "lifted", that is, the effective weight on the tires was reduced. The second manner in which a car might go out of control as a result of design problems is that when the car has "lifted" or is "light", the front or rear wheels may begin to spin and therefore lose all traction on the road surface. In other words, the torque force on the wheels may exceed the frictional forces between the tires and road surface.

Plaintiffs contend that because of Chrysler's failure to install adequate aerodynamic and handling systems, the car was defective and dangerous beyond the expectations of the ordinary consumer and that these defects caused the injuries to the plaintiffs who fit within the definition of ultimate consumer.

Plaintiffs further contend that Chrysler was required to foresee that a GTX would be driven at high speeds grossly in excess of the speed limit on public roads. The plaintiffs urge that the advertisements of Chrysler support this conclusion. Generally, the ads claim that the GTX is a "hot" car and emphasized its speed and acceleration capabilities.

The defendant was claimed to have been negligent in that it failed to adequately test the car at speeds in excess of one hundred miles per hour and thereby failed to discover these problems and the need for remedying them. Further, it was negligent to sell a car such as the GTX without incorporating the safety features which were generally known in the automobile industry at the time of the manufacture of the car.

Chrysler generally denied all of plaintiffs' contentions except that they were in the business of manufacturing and selling cars and further claimed that the owner of the car made a substantial change in its condition by installing a special type of tire. They further claimed that even if all that the plaintiffs claimed were proven true, the conduct of the driver was the distinct, unrelated and efficient cause of the accident.

Chrysler, as third-party plaintiff, joined James R. Lane, the owner of the GTX, as a third-party defendant claiming that he was grossly negligent and that he had been drinking alcoholic beverages and was unfit to drive. James R. Lane claimed that he was not drunk and not even driving the GTX at the time of the accident.

These issues were submitted to a jury in a bifurcated trial from March 28, 1973 through April 9, 1973. The jury returned its verdict in the form of answers to special interrogatories upon which the Court entered a verdict in favor of defendant and against plaintiffs. The jury answered the special interrogatories as follows:

Chrysler was negligent.

The GTX was not unreasonably dangerous.

Chrysler's negligence was not a substantial factor in causing the accident.

James R. Lane was not the driver of the GTX at the time of the accident.

Before us at this time are the motions of the plaintiffs and Chrysler as third-party plaintiff for a new trial. We shall first consider the motion of the plaintiffs, the Neiders, for a new trial. They raise six claims of error; each of which they believe is so serious that a new trial is required.

The first alleged error was the admission of the evidence regarding the drinking of alcoholic beverages by third-party defendant James R. Lane. Plaintiffs rely on the Pennsylvania doctrine which requires that evidence of intoxication is inadmissible unless there exists sufficient evidence to reasonably show a degree of intoxication which proves the driver's unfitness to drive at the time of the accident. Fisher v. Dye, 386 Pa. 141, 125 A.2d 472 (1956). After holding an *in camera* hearing to determine if such evidence existed, a procedure which we believe is strongly recommended if not required by Pennsylvania law, we held that such evidence was present. James R. Lane testified that he was at a beer party earlier in the day and purchased and had consumed more beer shortly before the accident. A Pennsylvania state policeman testified that he found a number of beer cans both full and empty in the Lane car after the accident. A nurse testified when and how a blood sample was taken from Lane. A state police crime lab technician testified to the manner of testing the sample and the reading. Finally, Dr. Joseph R. DiPalma, a physician and Chairman of the Department and Professor of Pharmacology at Hahneman

Medical Center testified at the *in camera* hearing that even if James R. Lane had an alcohol level in his blood of .06 per cent, the reading at the hospital three and a half hours after the accident, it would be extremely dangerous for him to be driving at that rate of speed. (N. T. at 669–70). Later, before the jury, Dr. DiPalma gave a similar opinion. (N.T. at 917–18). Although ·that opinion and some of the supporting testimony was weakened on cross-examination, we conclude that Chrysler did make out a prima facie case that Lane was unfit to drive under those conditions due to consumption of alcohol.

■ Even if it was error to admit such evidence, we believe that in view of the jury's findings that Lane was not driving the car, the error was harmless. This Court instructed the jury that:

If you find that Mr. Lane had taken alcoholic beverages prior to the accident, but was not the driver of the vehicle at the time the accident occurred, then, all the testimony concerning drinking is not relevant to the question of liability and I direct you to disregard entirely all of that testimony in reaching your verdict. (N.T. at 1203)

Plaintiffs assert that the jury may have imputed the drinking testimony to the person driving the car, apparently Clarence Holbrook. We find no support for that conclusion, and the jury would have had to disregard the Court's specific instructions to reach that conclusion.

■ The plaintiffs' next point is that the Court should have charged the jury that plaintiffs could be entitled to recover even if Lane was not driving the GTX. We find no merit in this argument. Admittedly, the Court did state to the jury that plaintiffs claim that James R. Lane was operating the GTX at the time of accident. (N.T. 1187). That statement, however, was correct. Plaintiffs in their complaint aver that Lane was the driver of the GTX and plaintiffs also so state in the final pretrial order. The charge, however, did not condition a verdict for the plaintiffs on a finding that Lane was

driving. First, the special interrogatories by their order made clear to the jury that they were not to consider whether Lane was driving until after they had reached a decision concerning Chrysler's liability. Furthermore, when enumerating the elements which the jury must find in plaintiffs' favor to reach a verdict for plaintiffs, the charge never in any way made the identity of the driver a condition for a finding against Chrysler. (N.T. at 1193–98). In fact, that area of the charge does not mention Lane except on the matter of substantial change in condition of the car. Certainly the charge when taken as a whole did not mislead the jury on this point.

Third, the plaintiffs argue that ·the Court's charge that Chrysler was not liable if the driver's conduct was a distinct, unrelated and efficient cause of the accident may have mislead the jury. The Court's charge on superseding causes (N.T. 1197–99) was taken directly from 1. B.Laub, Pennsylvania Trial Guide, § 164.4 (1959).

■ Plaintiffs complain that the Court did not instruct the jury that an efficient cause was a superseding cause, nor did the Court give the jury an explanation of efficient cause. Admittedly, the main body of the charge did not define superseding cause as such. That was, however, because the charge contained the traditional Pennsylvania language on intervening cause, not the Restatement language. The Pennsylvania standard charge does not use the word superseding cause nor did the charge here. Pennsylvania has adopted the Restatement position, Whitner v. Lojeski, 437 Pa. 448, 461, 263 A.2d 889 (1970), but we do not believe that there is any real difference between the tests. Moreover, in an abundance of caution, plaintiffs' suggested points on superseding cause were read to the jury. This action was taken specifically at plaintiffs' attorney's request, and plaintiffs' attorney stated that reading his points 32, 33, and 35, which were read before the jury commenced deliberations, would solve any problem in the charge.

We do not believe that any error was made; and if there was any confusion, it was created by the adoption of plaintiffs' suggestions. No new trial will be granted on this alleged error.

■ The plaintiffs next argue that the jury's responses to the special interrogatories were inconsistent. There is at least one possible, consistent, proper series of conclusions which the jury could have reached in answering the interrogatories as they did. For example, the jury might have concluded that Chrysler negligently failed to adequately test the car, but the car was perfectly safe. Therefore, there would be no liability because the negligence caused no damages. This point merits no further discussion.

■ The next alleged error upon which the plaintiffs base their motion is the admission of the testimony of Donald J. Barton and Jon S. McKibben. Donald J. Barton is a civil engineer and was permitted to testify, over objection, that he had conducted a survey of the accident scene and prepared a map depicting the area. Plaintiffs argue that the testimony should have been excluded because he was an expert giving an expert opinion, but he was not listed as such in the final pretrial order. The testimony of this witness, however, was admitted as factual testimony. He merely described what he saw when he visited and observed the accident scene. He was permitted to use a drawing he had made to show the scene and the measurements which he had made of it. The drawing was not admitted into evidence. The most important information given in his testimony was the curvature in the road, both horizontal and vertical. Under the facts and circumstances of this case, Mr. Barton's testimony was properly characterized as fact testimony. He gave no opinion evidence, but merely reported the measurements he had made.

■ The plaintiffs argue that it was error to permit Jon S. McKibben to testify. This alleged error is based in part on the fact that Donald J. Barton testified because Jon McKibben made use of some of the information adduced from Mr. Barton in his testimony. To that extent, this argument has already been answered. Plaintiffs further argue that defendants were extremely late in identifying Mr. McKibben and thus in responding to their interrogatories. Furthermore, plaintiffs state that Chrysler's lateness in giving information concerning Mr. McKibben was in violation of the orders of this Court. Although plaintiffs' statements are correct, it is important to put these matters in proper perspective. In preparing for this case, the parties engaged in extensive and highly contested discovery. Regarding the failure to give proper information promptly, Chrysler was guilty of a number of violations, but so were the plaintiffs. See our Memorandum and Order dated February 8, 1973. We decided that the best way to bring this matter to trial fairly was to permit depositions of the experts. Plaintiffs were given the opportunity to depose Mr. McKibben during the trial and did so. They now claim that such discovery was not adequate under the circumstances of this case, but they do not explain how it was prejudicial. We find no prejudice.

■ Plaintiffs' final contention of error that the defendant should not have been permitted to cross-examine one witness on his view of the correctness of the testimony of another witness. This problem arose during the cross-examination of plaintiffs' expert, Arthur Nelson Sanborn, III. In this cross-examination, the defense attorney attempted to sort out which parts of other witness's testimony he was accepting as the factual basis for his expert opinion and which parts he was rejecting. This method of cross-examination is perfectly proper and the subject matter sought is perfectly proper. We find no error here.

Accordingly, plaintiffs' motion for a new trial is denied. Thus, there is no need to consider the motion of Chrysler for a new trial against third-party defendant James R. Lane. We shall consider that matter only if in the future it becomes necessary.