Maria McLAIN, Plaintiff
Below, Appellant,

v.

GENERAL MOTORS CORPORATION,
Defendant
Below, Appellee/Cross–Appellant.

Supreme Court of Delaware.

Submitted: Oct. 17, 1989.
Decided: Jan. 24, 1990.

David H. Erisman of Cooch and Taylor, Wilmington, for appellant.

Somers S. Price, Jr. (argued), and Laurie S. Silverstein of Potter, Anderson & Corroon, Wilmington, for appellee.

Before MOORE and HOLLAND, JJ., and BERGER, Vice Chancellor (Sitting by designation pursuant to Del. Const. art. IV, § 12).

HOLLAND, Justice:

This is an appeal in a personal injury/products liability action. The litigation arose from an automobile collision which occurred on December 28, 1983, in New Castle County. The plaintiff-appellant, Maria McLain ("McLain") filed suit to recover damages for injuries sustained in the crash. The defendants were Thomas Dellavecchio ("Dellavecchio") and Eva D'Apollo Wolfe ("Wolfe"), the drivers of the two cars involved in the accident. General Motors Corporation ("GMC"), the manufacturer of the car in which McLain was a passenger, was also named as a defendant. McLain proceeded to trial only against GMC, having settled her claims against Dellavecchio and Wolfe.[1] The jury returned a verdict in favor of GMC.

---

1. GMC continued with its cross-claims against Wolfe and Dellavecchio at trial. GMC argued

McLain filed this appeal from the verdict of the jury and from the denial of her motion for a new trial. McLain alleges that the Superior Court committed reversible error with respect to three evidentiary rulings by: (1) admitting into evidence a film of a crash test, which was not identified by GMC until the first day of trial; (2) denying her attorney's motion to strike certain testimony of an expert witness, when that testimony was not identified in pre-trial discovery responses; and (3) permitting the "expert" testimony of two witnesses, who were identified only as fact witnesses in pre-trial discovery responses. McLain alleges that the cumulative effect of these errors was so prejudicial that it deprived her of a fair trial.

GMC filed a cross-appeal. GMC asserts that a directed verdict should have been entered in its favor at the close of McLain's case or at the close of trial. We find it unnecessary to address GMC's claim, since we have concluded that none of the evidentiary rulings being challenged by McLain were erroneous.

### Facts

On December 28, 1983, at approximately 2:45 a.m., a two-car collision occurred on U.S. Route 13, at the entrance to U.S. Interstate Route 495. It involved a 1978 Pontiac Grand Prix, driven by Wolfe and a 1981 Pontiac Firebird, driven by Dellavecchio.[2] As Wolfe was making a left hand turn, she was struck by Dellavecchio's car, which was going straight through the intersection. Wolfe testified that as she approached the intersection, the left turn arrow was green. Dellavecchio testified he had a green light when he entered the intersection.

Both vehicles were badly damaged. The occupants of each vehicle sustained injuries. Dellavecchio's vehicle contained three passengers. Dale Gills ("Gills") was in the right front seat. Robert Mader ("Mader") was in the left rear seat. McLain was in the right rear seat. Lorrie Bland ("Bland") was a passenger in the Wolfe vehicle.

McLain was seriously injured. According to the record, she suffered a depressed skull fracture, a massive right parietal scalp contusion, an orbital fracture, an epidural hematoma and cerebral contusion with pneumocephalus. At a later time, McLain was admitted to the St. Francis Hospital with post-traumatic headaches, tinnitus in her right ear, occasional numbness of her right arm and intermittent cranial bruit. An arteriography performed in January, 1984, revealed a trauma induced dural arteriovenous malformation (AVM) for which she was referred to the Hospital of the University of Pennsylvania for embolization by neuroradiology. McLain was placed on lifetime restrictions by her treating neurosurgeon.

In her complaint, McLain alleged that GMC was negligent in failing to provide a reasonably safe interior for its occupants in the event of foreseeable collisions. McLain contended that "the design and location of the right front seat passenger's seat belt retractor provided insufficient clearance for outboard rear seat occupants such as herself, created an unfriendly hostile interior, a foreseeable impact hazard, and placed a mechanism of injury within the passenger non-encroachment zone, thereby making the car's interior unreasonably dangerous." Specifically, McLain alleged that she impacted the ceiling-mounted seat belt retractor on the rebound from hitting the back of the right front passenger seat in what she characterizes as the "first" collision. According to McLain, this negligence by GMC caused her to suffer enhanced injuries, including a depressed skull fracture, with resulting complications, including the AVM. GMC denied McLain's allegations.

This case was tried before a special jury in the Superior Court from October 5, 1987, through October 29, 1987. Both parties presented expert testimony on accident re-

that the conduct of its original co-defendants was the cause of McLain's injuries.

**2.** Both drivers were under the influence of alcohol at the time of the accident. Dellavecchio's blood alcohol level was .13 percent and Wolfe's blood alcohol level was .12 percent.

construction, occupant kinematics (the movement of the vehicle's passengers during the accident sequence), and alternative design of seat belt assemblies. Expert testimony was also offered to establish and to rebut evidence concerning the cause and extent of McLain's injuries.

At the close of the plaintiff's case and at the end of trial, GMC moved for a directed verdict. The motion was denied each time. On October 29, 1987, the jury, found that GMC was not negligent in the design of the retractor and returned a verdict for the defendant. The case was submitted to the jury with special interrogatories.[3]

On November 5, 1987, McLain moved for a new trial. On November 9, 1987, GMC filed a motion for judgment notwithstanding the verdict, should McLain's motion be granted. On August 1, 1988, the Superior Court denied McLain's motion and, therefore, also denied GMC's motion.

### The Crash Test Film

■ A pretrial order was entered on December 16, 1986. The terms of the original pretrial order provided that General Motors would identify its exhibits on or before the date sixty (60) days prior to the trial date and that McLain and the other defendants would be permitted to inspect the exhibits and file any objections on any ground. Paragraph 12 of the pretrial stipulation was amended, by order of the Superior Court, on May 21, 1987. Under the terms of amended paragraph 12, a cut-off date of July 6, 1987, as to expert discovery, was imposed.

On October 5, 1987, the morning of the first day of trial, GMC presented a motion to supplement the pretrial order. McLain's attorney was not served with the motion until that morning. The only portion of the motion at issue on appeal is the request for the trial judge to permit "supplementation of the existing pretrial order in this matter to include as an exhibit a videotape, photographs, and motion picture of a barrier crash test performed on October 1, 1987." GMC's attorneys argued that the supplementation of the pretrial order was necessary to prevent manifest injustice because seventeen days before trial, and subsequent to the final day on which discovery was permissible under the amended pretrial order, GMC learned that McLain's theory of GMC's negligence had changed. Over McLain's objection, the trial judge granted GMC's motion to present the film and videotape of the barrier crash test to the jury as evidence and also allowed GMC to admit still photographs of that test into evidence.

The alleged change in McLain's theory of negligence relates to a report by one of McLain's experts. On October 10, 1986, almost one year in advance of trial, McLain's attorney furnished GMC with the report of John Marcosky, P.E. ("Marcosky"), one of McLain's witnesses, who was identified as an expert in automotive design and crashworthiness. The first paragraph of Marcosky's report stated that the front of Dellavecchio's Firebird contacted the right rear of Wolfe's Grand Prix, resulting in the apparent *counterclockwise* rotation of the Firebird. In response to GMC's interrogatories in June, 1987, and July, 1987, McLain confirmed the opinion of Marcosky that the Firebird rotated *counterclockwise* during the accident. However, on September 17, 1987, McLain's attorneys advised GMC that the reference to "counterclockwise" rotation in Marcosky's October 10, 1986 report was a "typographical error," and that the correct word should have been "clockwise."

GMC submits that prior to September 17, 1987, it had no reason to prepare to rebut a claim that the Firebird rotated in a *clockwise* direction. According to GMC's motion to supplement the pretrial order, police officers Paul Taylor and Michael Smith, who had investigated the scene of the accident, passenger Gills and driver Dellavecchio had all given deposition testimony that, during

---

**3.** The first question was: "Do you find that General Motors Corporation was negligent by its failure to properly design and locate the seat belt retractor in the 1981 Firebird?" The jury was unanimous in answering this question in the negative. Therefore, it did not have to answer the other seven special interrogatories.

the accident, the Firebird rotated in a *counterclockwise* direction. Based on the deposition testimony, and the information McLain provided to GMC prior to notice of the "typographical error," GMC argues the parties were in apparent agreement as to the issue of the direction of the rotation of the Firebird during the accident. According to GMC, on September 17, 1987, it learned for the first time that Marcosky was really of the opinion that the Firebird rotated *clockwise* during the accident.

On September 21, 1987, after having consulted its experts, GMC notified McLain's attorneys that in view of the "typographical error," GMC reserved the right to "take whatever action is appropriate in order to respond to this complete change of vehicle direction." Coincidentally, on this same day, McLain's attorneys informed GMC that Dr. Steven C. Batterman, Ph.D. ("Batterman"), another of McLain's witnesses, previously identified as an expert in biomechanical engineering, motor vehicle accident reconstruction, and crashworthiness, would testify that the Firebird rotated *clockwise.* Two days later, on September 23, 1987, McLain's counsel informed GMC that Marcosky would not be testifying at trial as an accident reconstructionist. GMC conducted the crash barrier test on October 1, 1987, and the results were available on the afternoon of October 2, 1987.[4]

In their motion to supplement the pretrial order, GMC argued that the rotation of the Firebird would be an important issue if McLain maintained her "rebound" theory, i.e., that she first flew forward against the back of the front seats and then backward, thereby hitting the back of her head on the seat belt retractor. GMC submitted that if the car spun in a *counterclockwise* direction, as originally stated in the Marcosky report, the area of the seat belt retractor would have been moving away from McLain when she rebounded off the front seat. Conversely, GMC acknowledged if the Firebird spun *clockwise,* McLain could have rebounded in the direction of the area of the seat belt retractor, after hitting the front seat. Therefore, GMC argued that

when McLain changed her position on the rotation of the Firebird, it became necessary for GMC to examine McLain's contention regarding the direction and velocity of her rebound by conducting a crash barrier test.

Delaware Superior Court Civil Rule 16(a) provides, in part, that a pretrial order "controls the subsequent cause of the action, unless modified at the trial to prevent manifest injustice." The Superior Court found that the correction of the "typographical error" changed McLain's case in a significant way. The Superior Court permitted GMC to present evidence of the barrier crash test because it concluded that the change in McLain's case unfairly surprised GMC, only seventeen days before trial, after the discovery deadlines imposed by the pretrial order had passed.

The record reflects that a major issue in this case, which involved the application of accident reconstruction techniques, was the post-impact rotation of the Firebird and the resulting movement of McLain within that vehicle. The "typographical error" in Marcosky's original report was not corrected for more than a year. The statement of Marcosky's original theory of counterclockwise rotation by the Firebird, following impact, was consistent with the pretrial deposition testimony and interrogatory responses. Under the circumstances of this case, we find that the Superior Court did not abuse its discretion in granting GMC's motion to supplement the pretrial order, "to prevent manifest injustice." Super.Ct. Civ.R. 16.

### Dr. Edelsohn's Testimony

■ The first witness called by GMC was Dr. Lanny Edelsohn ("Dr. Edelsohn"), a neurologist who performed an independent medical examination (IME) on McLain on October 10, 1986, pursuant to Superior Court Civil Rule 35. At trial, Dr. Edelsohn was qualified as an expert in the area of neurology. He testified concerning the medical history that he took, his neurological examination, preliminary conclusions and familiarity with AVMs. Both parties

4. This was the Friday before the Monday on    which trial was scheduled to begin.

agree that the aforementioned testimony was in consonance with his medical report and the interrogatory answers which were provided during discovery.

Dr. Edelsohn also testified, with the aid of demonstrative exhibits, that in his opinion McLain had suffered a basilar fracture, which resulted in the AVM. McLain's attorney moved to strike this portion of Dr. Edelsohn's testimony, the day after he had cross-examined Dr. Edelsohn for three and one-half hours, on the ground that it was beyond the scope of what the pretrial discovery had disclosed as Dr. Edelsohn anticipated testimony. The motion to strike was denied.

In response to an interrogatory posed by McLain which requested GMC to "summarize the substance of each and every opinion to which each expert is expected to testify," GMC responded, in part:

It is Dr. Edelsohn's opinion that plaintiff did suffer a depressed skull fracture and an epidural hematoma with a degree of pneumocephalus on December 28, 1983. Subsequently, she developed a traumatic middle meningeal artery fistula [same as AVM].

It is Dr. Edelsohn's further opinion that the fistula was successfully embolized at the Hospital of the University of Pennsylvania and that, except for a two to three month recovery period in 1984, plaintiff should not have any restrictions of the type presently imposed on her.

Dr. Edelsohn is of the opinion that plaintiff's current headache symptoms are only partially related to the December 28, 1983 accident and that the major components of this condition are emotional and social issues which are unrelated to the December 28, 1983 accident.

In addition to these interrogatory answers, prior to trial, GMC provided McLain's attorney, with Dr. Edelsohn's report of October 13, 1986. Super.Ct.Civ.R. 35(b)(2). McLain did not take Dr. Edelsohn's deposition, although she could have done so. Su-

per.Ct.Civ.R. 35(b)(3). In denying McLain's motion to strike, the Superior Court stated:

I think if you had made the objection yesterday, I would have ruled the same way I'm going to rule now, and that is that the information dealing with causation of the symptoms is a broad general term. It is, however, a term that would cover the testimony that the doctor gave yesterday. And my ruling yesterday would have been that if that was a major concern, it could have been followed up with depositions of the doctor, it could have been followed up with further interrogatories, a motion to compel a more definite answer to that. So I'm going to deny your motion to strike that testimony. I think it is within the answers that were given. And for that reason, it would be admissible.

The report of Dr. Edelsohn's IME and GMC's discovery responses indicated that Dr. Edelsohn was going to testify regarding the 1983 accident and the development of the AVM. Those responses also revealed that Dr. Edelsohn was going to testify about McLain's current headache symptoms, which he partially attributed to the accident.[5] The Superior Court concluded that if McLain was surprised by Dr. Edelsohn's testimony, it was attributable to her failure to depose Dr. Edelsohn or to pursue other discovery options. Based upon the record in this case, we find that the Superior Court did not abuse its discretion in denying McLain's motion to strike those portions of Dr. Edelsohn's testimony in which he opined that a basilar fracture caused the AVM.

### *The Testimony of Messrs. Rowland and Hebert*

■ On the tenth day of trial, GMC called as witnesses Edward Rowland ("Rowland") and Robert Hebert ("Hebert"), retired GMC employees. Both men had been extensively involved in the design and placement of the seat belt retractor mechanism at issue. McLain's attorney ob-

---

5. Although Dr. Edelsohn testified that the AVM was "cured," McLain's own expert, Dr. Pierre LeRoy ("Dr. LeRoy") testified at length that McLain currently suffered from the AVM.

Therefore, according to McLain's version of the facts, the AVM was a "current symptom" upon which Dr. Edelsohn would have been permitted to opine.

jected to Rowland and Hebert testifying on the ground that what they would be presenting expert testimony to the jury, and they had not been designated as experts by GMC prior to trial. GMC asserted that Rowland and Hebert were being called to testify as fact witnesses, concerning their first hand knowledge of design work on the seat belt retractor in the 1981 Firebird.

The Superior Court ruled that Rowland and Hebert could not testify as experts. However, the Superior Court also ruled that prior to trial, Rowland and Hebert had properly been identified as fact witnesses. *Compare Stafford v. Sears, Roebuck & Co.*, Del.Supr., 413 A.2d 1238 (1980). Therefore, the Superior Court permitted Rowland and Hebert to testify, based upon their personal knowledge, as to what they did. The issue in this appeal is whether Rowland's and Hebert's testimony was factual or constituted expert testimony. *Id.*[6]

Testimony by a person who has expertise in a certain area is not *ipso facto* expert testimony. The rules of evidence draw a distinction between testimony by a witness, based upon personal knowledge of *the facts in the case* and testimony by a witness, who has been qualified as an expert, in the form of "an opinion or otherwise" about a subject area which is relevant to the case. *Compare* D.R.E. 602 *and* D.R.E. 702. When a witness testifies based on their own experience, knowledge and observation about *the facts in the case*, they are not giving "expert testimony," as that term is defined by the rules of evidence.[7]

The record reflects that GMC limited its examination of both Hebert and Rowland to questions of their direct personal involvement in the development of the seat belt retractor system at issue, the resources that were available to them at GMC for development of the seat belt system and any alternative designs contemplated at the time of its design by these two men. Neither Rowland nor Hebert were questioned by GMC's attorney regarding their opinions or conclusions as to whether, for example, the seat belt system complied with Federal Motor Vehicle Safety Standards, whether the seat belt system was designed in a negligent manner, or whether any alternative system proposed by McLain's expert was better. In contrast to the testimony GMC elicited from Rowland and Hebert, the "experts" identified by GMC in discovery, including GMC employee Frank Montalvo and former employee Richard Stewart, were asked to make a "second-hand"[8] evaluation of the seat belt system, to state their ultimate opinions on GMC's negligence or lack thereof in the design and also to opine on the feasibility of and problems with any alternative designs posited by McLain's experts.

The Superior Court's conclusion that Rowland's and Hebert's testimony was of a factual, and not an expert nature, is supported by the record. The record reflects that, in the case *sub judice*, Rowland and Hebert testified, from personal knowledge, as to what they did, understood, and considered when designing the seat belt re-

---

**6.** McLain made a continuing objection to the testimony of Rowland and Hebert in an effort to avoid constantly objecting before the jury.

**7.** *Accord Neider v. Chrysler Corp.*, 361 F.Supp. 320, 324 (E.D.Pa.1973) (civil engineer permitted to testify regarding a survey he had conducted of the accident scene; witness "merely described what he saw when he visited the accident scene," and "gave no opinion evidence"); *Baggett v. Ashland Oil & Ref. Co.*, 92 Ill.App.2d 433, 236 N.E.2d 243 (1968) (witness who testified as to the pump locations, the mechanical functions of equipment and chemical composition of crude oil was a fact witness because he was "properly testifying to facts which he had *observed* through the years and were part of his own experience"). *See also Musgrove v. Leonard*, 97 Ariz. 44, 396 P.2d 614 (1964) (en banc) (a party may testify to his own acts); *Galvan v. Cameron Mut. Ins.*, 733 S.W.2d 771 (Mo.Ct.App. 1987) (Non-expert fire chief could testify to his observations during a post fire inspection).

**8.** Richard Stewart testified that he was retained by GMC to "determine if the restraint system that was involved in the right front seat of the '81 Firebird was a defective design, and also review from the standpoint of a rearseat occupant and determine if that was determined as a hazard for a rear seat occupant." Mr. Stewart reviewed the interrogatories, depositions, statements, police report and drawing, and inspected the vehicle at issue. Rowland and Hebert were not supplied with any of this information. They never inspected the vehicle. They did not testify regarding the accident or the 1981 Firebird at issue.

tractor system for the 1981 Firebird. The questions asked of Rowland and Hebert did not attempt to elicit a response from them in the form of an "opinion or otherwise" with respect to the "ultimate issue" of whether GMC was negligent in the design of the seat belt retractor system, or any other aspect of this case. D.R.E. 702–703. *Compare Stafford v. Sears, Roebuck & Co.*, 413 A.2d at 1245. The Superior Court's decision that the testimony given by Rowland and Hebert was non-expert in nature, is AFFIRMED.

### Conclusion

The Superior Court did not abuse its discretion or err as a matter of law, in any of the evidentiary rulings raised by McLain. *Firestone Tire & Rubber Co. v. Adams*, Del.Supr., 541 A.2d 567, 570 (1988); *Strauss v. Biggs*, Del.Supr., 525 A.2d 992, 997 (1987). It is unnecessary to address the issues raised in the cross-appeal by GMC. The judgment of the Superior Court is AFFIRMED.