IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MALIK J. MOSS, | § | |
| | § | No. 416, 2016 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | Court Below: |
| v. | § | Superior Court of the |
| | § | State of Delaware |
| STATE OF DELAWARE, | § | |
| | § | Cr. I.D. No. 1505002467 (N) |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: June 14, 2017
Decided: June 28, 2017

Before **STRINE**, Chief Justice; **VALIHURA** and **SEITZ**, Justices.

This 28th day of June 2017, upon consideration of the briefs and record on appeal, it appears to the Court that:

(1)     Malik J. Moss ("Moss") appeals from his conviction and sentence for Drug Dealing, Disregarding a Police Officer's Signal, Reckless Driving, and Possession of Marijuana. Moss was also convicted of one count of Aggravated Possession, which the Superior Court deemed merged with the Drug Dealing charge for sentencing purposes.[1] Just before midnight on April 30, 2015, Officer Donald Fisher of the New Castle County Police Mobile Enforcement Team ("MET") observed a Camaro that had been "flagged" by the Delaware State Police ("DSP") in reference to an investigation.[2] Officer Fisher

---

[1] *See* Ex. A to Opening Br. (Sentence Order at 3); App. to Opening Br. at A654.

[2] App. to Opening Br. at A36-37, A40.

1

followed the Camaro, and the driver of the Camaro accelerated rapidly through a residential neighborhood, fleeing the officer. After Officer Fisher lost sight of the Camaro, he radioed for backup. MET officers soon located the abandoned Camaro in an unrelated individual's front yard. The Camaro was not registered to Moss. However, MET officers found Moss's fingerprints on the car's exterior and on heroin packaging found at the scene. None of the prints matched Arthur Rossi ("Rossi"), who was the target of the DSP investigation that resulted in the flag on the Camaro.[3]

(2) On the driver's side floor of the Camaro, MET Officer Bryan Flores-Reyes found 117 baggies of heroin stamped with a "light bulb" logo. He also found a cell phone (the "Camaro Phone") and marijuana. On the road nearby, he found a black plastic bag containing 320 baggies of heroin with light bulb stamps, 342 baggies stamped "BMW," and 26 baggies stamped "Bully," for a total of 688 baggies outside of the vehicle. The State's forensic chemist testified that she received an envelope containing 117 baggies with a BMW stamp. In another envelope, she counted 341 additional baggies with BMW stamps, 319 with light bulb stamps, 26 with Bully stamps, and 2 with no stamp. Thus, the State's witnesses disagreed about the number of baggies associated with each stamp. On this basis, Moss objected to the admissibility of the drug evidence, arguing that the State had failed to establish a proper chain of custody. The Superior Court overruled the objection, holding that the discrepancy went to the weight of the evidence, not its admissibility.

---

[3] The Camaro was owned by Rossi's ex-wife. *Id.* at A537.

2

(3) At trial, the State also offered reports showing data extracted from the Camaro Phone and contacts downloaded from a phone seized during Moss's arrest (the "Moss Phone"). Detectives in the Tech Crimes Unit testified to using software called "Cellebrite" to generate reports of each phone's calls, contacts, text messages, web history, and images. The reports admitted at trial (the "Camaro Phone Report" and "Moss Phone Report") indicated that approximately 55 of the 63 contacts in the Moss Phone matched contacts in the Camaro Phone. Incoming messages on the Camaro Phone Report referred to the person using the Camaro Phone as "Malik" or "Bleek," which was the name Moss used to identify himself when making phone calls from prison.

(4) Moss raised three objections to the cell phone data at trial. *First*, he argued that expert testimony was required to admit both the Camaro Phone Report and the Moss Phone Report. *Second*, Moss contended that the State failed to authenticate Camaro Phone Report. *Third*, Moss argued that all of the text messages within the Camaro Phone Report constituted inadmissible hearsay. In overruling these objections, the Superior Court held that the detectives did not provide any expert opinion and therefore could testify as lay witnesses. The court also held that the State had sufficiently authenticated the Camaro Phone and its data. As to hearsay, the court deemed Rossi and an individual named Jamie Birch ("Birch" or "40 Rome") unavailable pursuant to D.R.E. 804(a). The court expressly found that Rossi had evaded contact with the State. The court then found that references to the stamps, drugs, or the Camaro constituted statements against interest pursuant to D.R.E. 804(b)(3). Finally, the court held that references to "Malik" or "Bleek" were not hearsay because they were not offered to prove the truth of the matter asserted. The jury

3

convicted Moss on all charges. In this direct appeal, he challenges these evidentiary rulings.

(5) "In general, the decision of whether to admit evidence, in particular circumstances, is within the trial judge's discretion."[4] Thus, this Court "review[s] trial court rulings on the admissibility of evidence for abuse of discretion."[5] We review alleged constitutional violations *de novo*.[6]

(6) The Superior Court did not abuse its discretion in rejecting Moss's chain of custody challenge and in admitting the drug evidence over that objection. "The proper standard for the admission of items into evidence over a chain of custody objection is whether there is a reasonable probability that the evidence offered is what the proponent says it is—that is, that the evidence has not been misidentified and no tampering or adulteration has occurred."[7] "[W]hen there is no clear abuse of discretion, any breaks in the chain of custody go only to the weight, not the admissibility, of the evidence."[8]

(7) 10 *Del. C.* § 4331(1) defines "chain of custody" as the seizing officer, packaging officer, and forensic chemist.[9] Moss does not dispute that the State presented

---

[4] *Tricoche v. State*, 525 A.2d 151, 152 (Del. 1987) (citations omitted).

[5] *Brown v. State*, 117 A.3d 568, 578-79 (Del. 2015) (citing *McNair v. State*, 990 A.2d 398, 401 (Del. 2010); *Stickel v. State*, 975 A.2d 780, 782 (Del. 2009)).

[6] *Wheeler v. State*, 135 A.3d 282, 295 (Del. 2016) (citing *Bradley v. State*, 51 A.3d 423, 433 (Del. 2012)).

[7] *Brown*, 117 A.3d at 579 (quoting *Word v. State*, 2001 WL 762854, at *3 (Del. June 19, 2001)) (internal quotation marks omitted) (additional citation omitted); *see* D.R.E. 901(a).

[8] *Id.* at 580 (citing *Word*, 2001 WL 762854, at *3).

[9] 10 *Del. C.* § 4331(1).

testimony from all witnesses necessary to complete the chain of custody pursuant to Section 4331(1). The State also established as a matter of reasonable probability that the drugs had not been misidentified or adulterated. The total number of baggies counted by Officer Flores-Reyes and the forensic chemist was exactly the same—805. The State argued that the discrepancy in the number of baggies allocated to each stamp population could be attributed to error. Moss's counsel had the opportunity to argue to the jury that the stamp discrepancy rendered the evidence unreliable. The Superior Court did not abuse its discretion in holding that the discrepancies went to the weight of the evidence, as opposed to its admissibility.

(8)     The Superior Court also did not abuse its discretion in admitting the Camaro Phone Report. On appeal, Moss challenges the admissibility of the individual text messages contained within the Camaro Phone Report on grounds of lack of authentication as well as on hearsay grounds. As to his authentication challenge, he contends on appeal that, "[t]he trial court failed to engage in a meaningful analysis as to whether the text messages contained within the extraction report were properly authenticated."[10] But in fairness to the trial judge, at trial, Moss presented a global authentication challenge to the Camaro Phone Report in its entirety and raised only hearsay objections to the individual messages within the Camaro Phone Report.[11] Although Moss's authentication and hearsay

---

[10] Opening Br. at 29.

[11] The closest Moss came to raising an authentication objection directed at the individual text messages was when his counsel advised the trial court that he "object[ed] across the board to every message on [the Camaro Phone] . . . [o]n the basis of hearsay and I maintain lack of foundation." App. to Opening Br. at A349 (Tr. 206:10-15). Reading the discussion in context, however, the

5

objections implicate problems involving the identity of each message's author, each objection invokes a distinct legal analysis.[12] The question of authenticating individual messages appears not to have been fairly presented to the trial judge, who attempted to address Moss's blanket hearsay challenges to thousands of text messages during the trial. Thus, we review Moss's argument as it relates to the authentication of individual messages for plain error.[13]

(9) D.R.E. 901(a) provides that the authentication requirement "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."[14] This Court's decisions involving authentication of text messages and social media posts suggest that text messages may be authenticated using any means available in

---

objection focused on whether the Camaro Phone Report constituted an accurate depiction of the data on the Camaro Phone. *See, e.g.*, *id.* at A353 (Tr. 210:14-20).

[12] As discussed more fully herein, authentication requires the proponent of each text message to provide "evidence sufficient to support a finding that the matter in question is what its proponent claims." D.R.E. 901(a). Moss's hearsay objections focused on whether the individual author of each text message was unavailable pursuant to D.R.E. 804(a)(5), which requires the proponent to demonstrate its good-faith efforts to identify and locate each declarant in order to secure their testimony. D.R.E. 804(a)(5); *see* 29 AM. JUR. 2D *Evidence* § 701.

[13] Del. Supr. Ct. R. 8.

[14] D.R.E. 901(a).

D.R.E. 901.[15]  As this Court explained in *Parker v. State*,[16] in considering a claim that the trial court abused its discretion in admitting a Facebook post:

> Where a proponent seeks to introduce social media evidence, he or she may use any form of verification available under Rule 901—including witness testimony, corroborative circumstances, distinctive characteristics, or descriptions and explanations of the technical process or system that generated the evidence in question—to authenticate a social media post. Thus, the trial judge as the gatekeeper of evidence may admit the social media post when there is evidence "sufficient to support a finding" by a reasonable juror that the proffered evidence is what its proponent claims it to be.  This is a preliminary question for the trial judge to decide under Rule 104.  If the Judge answers that question in the affirmative, the jury will then decide whether to accept or reject the evidence.[17]

This guidance applies as well to authentication of text messages where there exist similar claims that such evidence could be faked or forged, or where there are questions as to the authorship of the messages if the transmitting electronic device could have been used by more than one person.

(10)  In this case, the State provided evidence from which the jury could infer that Moss authored the outgoing messages on the Camaro Phone Report.  The contacts on the

---

[15] *See Parker v. State*, 85 A.3d 682, 683, 687-88 (Del. 2014) (favoring the Texas approach to authentication of social media evidence over the stricter Maryland approach, reasoning that, "[a]lthough we are mindful of the concern that social media evidence could be falsified, the existing Rules of Evidence provide an appropriate framework for determining admissibility"); *Swanson v. Davis*, 69 A.3d 372, 2013 WL 3155827, at *4-5 (Del. June 20, 2013) (TABLE) (stating that a proponent of text messages could have authenticated them by testimony from "a custodian of the cell phone company" or "testimony by a witness with knowledge, by circumstantial evidence of distinctive characteristics, or through expert testimony or comparison with authenticated examples"); *see also State v. Zachary*, 2013 WL 3833058, at *2 (Del. Super. July 16, 2013) (ORDER) ("[T]he State, as the proponent of the text-message evidence, must explain the purpose for which the text messages are being offered and provide sufficient direct or circumstantial evidence corroborating their authorship to satisfy the requirements of D.R.E. 901.").

[16] 85 A.3d 682 (Del. 2014).

[17] *Id.* at 687-88 (citations omitted).

7

Moss Phone Report were nearly identical to those on the Camaro Phone Report. Text messages sent to the Camaro Phone addressed the intended recipient as Malik or Bleek.[18] Moss's fingerprints were found on the Camaro in which the Camaro Phone was found. His fingerprints were also found on some of the seized drug evidence, which circumstantially connected him to the drug-related texts. The State also presented testimony explaining the technical system, Cellebrite, that generated the Camaro Phone Report. This evidence was sufficient for the trial judge to permit the jury to make the ultimate finding on whether to accept or reject the text message evidence.[19]

(11) Further, we believe that the Superior Court did not abuse its discretion by not requiring expert testimony in admitting the Camaro Phone Report and the Moss Phone Report. D.R.E. 701 limits the opinions lay witnesses may provide to those "which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702."[20] D.R.E. 702 governs testimony by witnesses qualified as experts "by knowledge, skill, experience, training or education" whose scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue.[21]

---

[18] *See, e.g.*, App. to Opening Br. at A685 ("Bleekkkkkk [*sic*] even one and a half like pleaseeeee [*sic*] I'm so sick."); *id.* at A701 ("Malik I understand. You can always call me just to reach out.").

[19] *See Parker*, 85 A.3d at 687-88.

[20] D.R.E. 701.

[21] D.R.E. 702.

(12)    Police officers must be qualified as experts if they offer an opinion based on their technical or specialized knowledge.[22]  "It is well established that the testimony of a witness who possesses expertise in a certain area is not *ipso facto* expert testimony."[23] Further, "[a] distinction is drawn between testimony based upon one's personal knowledge of the facts of the case, and testimony by a witness, who has been properly qualified as an expert, in the form of 'an opinion or otherwise' concerning a subject area relevant to the case."[24]  Thus, "[a] witness may testify as to his or her own experience, knowledge and observation about the *facts of the case* without giving 'expert testimony' as defined in the rules of evidence."[25]  In this case, the detectives testified solely about the investigative procedure involved in using Cellebrite to generate a report.[26]  Their testimony did not include any analysis or opinions regarding the data generated.  Thus, the Superior Court did not abuse its discretion in permitting the detectives to testify as lay witnesses.

(13)    Finally, we find no reversible error with respect to the Superior Court's decision to admit limited categories of text messages over Moss's hearsay objections. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial

---

[22] *See Norman v. State*, 968 A.2d 27, 31 (Del. 2009) (concluding that police officers must be qualified as experts before identifying a controlled substance, but finding the error in failing to do so was harmless beyond a reasonable doubt given the circumstantial evidence that the substance seized was marijuana).

[23] *Duphily v. Del. Elec. Co-op., Inc.*, 662 A.2d 821, 835 (Del. 1995) (*en banc*) (emphasis in original) (citing *McLain v. Gen. Motors Corp.*, 569 A.2d 579, 584 (Del. 1990)).

[24] *Id.* (citing *McLain*, 569 A.2d at 584).

[25] *Id.* (emphasis in original) (citing *McLain*, 569 A.2d at 584).

[26] Detective Ruiz testified that he has worked in the Tech Crimes Unit analyzing digital devices since 2010.  App. to Opening Br. at A312.

or hearing, offered in evidence to prove the truth of the matter asserted."[27]  Hearsay statements are generally inadmissible.[28]  However, the Delaware Rules of Evidence provide exceptions to the rule against hearsay, some of which apply only if the declarant is unavailable.[29]  D.R.E. 804(a) provides a nonexclusive list of situations in which a declarant is considered unavailable, including when the declarant is "absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance by process or other reasonable means."[30]  Moss's hearsay arguments on appeal primarily concern the Superior Court's findings that certain declarants were unavailable.

(14)  First, Moss argues that the Superior Court erred in finding that Rossi was unavailable because, according to Moss, there was no evidence that the State attempted to secure Rossi's attendance at trial.  However, the docket reflects that an attempt was made to subpoena Rossi.[31]  Also, during trial, the State argued that it was unable to locate Rossi,[32] and Moss's counsel asserted that he knew where Rossi was but could not reach him.[33]

---

[27] D.R.E. 801(c).  "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion."  D.R.E. 801(a).

[28] D.R.E. 802.

[29] *See* D.R.E. 804.

[30] D.R.E. 804(a)(5).

[31] *See* App. to Answering Br. at B3 (Docket at D.I. 15).

[32] App. to Opening Br. at A28, A31, A394; *see id.* at A67 (testimony of Officer Fisher that he spoke with Rossi on June 12, 2015); *id.* at A73 (Tr. 68:17-18) ("[B]y the time I was able to get back around to [Rossi], he dropped his number").

[33] *Id.* at A32; *id.* at A395 (Tr. 15:21-22) ("I know where Mr. Rossi is.  I just can't access him.").

Based upon the record before us, we conclude that the Superior Court did not abuse its discretion in deeming Rossi to be unavailable.

(15) Next, Moss argues that the Superior Court's blanket statement that all unidentified declarants were unavailable was error. He further contends that the Superior Court erred by not independently analyzing the unavailability of the declarant of each incoming text message that referenced the stamps.[34] The Superior Court at one point did state that, "[a]s a factual matter, if you do not know the identity of the declarant and cannot identify the person by reasonable means, that person is unavailable as a legal matter."[35] But the Superior Court stated later that "if the identity of those declarants is readily available, and if that person could be procured as a witness, then they're not unavailable."[36] Thereafter, the parties agreed, at the court's direction, to examine the text messages on the Camaro Phone Report to determine whether redactions would be necessary.[37] The court again stated that there needed to be "testimony from the police officer . . . as to what efforts were made to find these declarants."[38] However, the State never offered testimony concerning its efforts to identify and locate the unidentified declarants.

---

[34] Moss had argued that each text message had a phone number associated with it, and that there was no evidence that the State attempted to use those numbers to locate the declarants and secure their attendance at trial. *Id.* at A372-73; *see also id.* at A391-92.

[35] *Id.* at A370 (Tr. 227:14-18).

[36] *Id.* at A373 (Tr. 230:9-14).

[37] *Id.* at A374. At defense counsel's suggestion, the State agreed to disclose to Moss which statements within the approximately 19,000 text messages on the Camaro Phone Report it intended to use at trial. *Id.* at A375.

[38] *Id.* at A394 (Tr. 14:6-9).

(16)    A proponent seeking admission of a hearsay statement under D.R.E. 804 has the burden to establish the declarant's unavailability.[39]  Generally, the proponent must show a good-faith, genuine, and bona fide effort to procure the declarant's attendance.[40] As to the unidentified declarants, that appears not to have been done.  Part of the problem appears to be of Moss's own making in not raising specific authentication objections before or during trial and raising the hearsay objections (centered on the declarants' unavailability) in global fashion in the midst of trial.  During trial, the court overruled Moss's "blanket hearsay objection"[41] and attempted to address the unavailability issue by focusing the parties on messages from Rossi and Birch, who had been found to be unavailable.  For example, the trial court stated that, "[t]o the extent possible, the State needs to limit these statements to the persons that I've already declared are unavailable and the issues that I've talked about, the mention of the car and the mention of the drugs."[42] The court ruled that the Camaro Phone Report would not be admissible in its entirety.[43] The parties appear to have endeavored to redact the Camaro Phone Report and to narrow the universe of messages to be presented to the jury.

---

[39] *See Hammond v. State*, 569 A.2d 81, 91 (Del. 1989) ("The proponent of any evidence always has the burden of establishing its admissibility.").

[40] 29 AM. JUR. 2D *Evidence* § 701; *see, e.g.*, *Cummiskey v. Chandris, S.A.*, 719 F. Supp. 1183, 1187 (S.D.N.Y. 1989) (holding that the proponent of a statement by an unidentified cruise ship employee "has not met her foundational burden of establishing the unavailability of the declarant" because the summary judgment papers "fail[ed] to reveal any effort by plaintiff to ascertain the identity of this person"), *aff'd,* 895 F.2d 107 (2d Cir. 1990).

[41] App. to Opening Br. at A398 (Tr. 18:15).

[42] *Id.* at A399 (Tr. 19:10-14).

[43] *Id.* at A401.  Some of the challenged texts appear not to be statements or assertions at all, and others appear not to be offered for the truth of the matter asserted.

(17) "[R]eversal is only required if 'there was significant prejudice to deny the accused of his or her right to a fair trial.'"[44] Although not a perfect process here, we conclude that any error in addressing the issue of unavailable declarants does not, on this record, rise to the level of reversible error. Given the substantial evidence presented by the State at trial, including Moss's fingerprints linking him to the drug evidence and the Camaro, the incoming text messages from Birch and Rossi, and the other evidence presented by the State, we cannot conclude that the trial court committed reversible error.

(18) Next, Moss argues that the Superior Court improperly admitted references to "Malik" or "Bleek." He contends that the Superior Court did not engage in the analysis required by D.R.E. 807. However, D.R.E. 807 was not the basis of the Superior Court's ruling. The court's ruling was that "the mention of a name . . . is not hearsay."[45] Moss does not seriously contest this ruling on appeal. Moss has not established that the Superior Court abused its discretion by admitting references to "Malik" or "Bleek."

(19) Moss's final hearsay argument is that the Confrontation Clause of the United States Constitution "bars" the admission of the text messages. Although Moss raised this argument at trial, he failed to address it in his Opening Brief on appeal. Accordingly, the argument has been waived.[46]

---

[44] *Stevenson v. State*, 149 A.3d 505, 509 (Del. 2016) (quoting *Milligan v. State*, 116 A.3d 1232, 1235 (Del. 2015)) (citing D.R.E. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]")).

[45] App. to Opening Br. at A398-99 (Tr. 18:23-19:5) ("I'm ruling that that is not hearsay.").

[46] *See* Del. Supr. Ct. R. 14(b)(vi)(A)(3).

13

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is

AFFIRMED.

BY THE COURT:

/s/ *Karen L. Valihura*
Justice