## MURRAY v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit.    October 8, 1917.)

No. 1511.

1. POST OFFICE ⊕⟹48(1)—OFFENSES—INDICTMENT—SUFFICIENCY.

Criminal Code (Act March 4, 1909, c. 321) § 217, 35 Stat. 1131 (Comp. St. 1916, § 10387), declares that whoever shall knowingly deposit or cause to be deposited for mailing or delivery, or shall knowingly cause to be delivered by mail according to the direction thereon, or at any place to which it is directed to be delivered by the person to whom it is addressed, anything declared to be nonmailable, with the design, intent, or purpose to kill or in any wise hurt, harm, or injure another, shall be punished. An indictment charged that accused deposited and caused to be deposited in a post office of the United States, to wit, the post office at Charleston, W. Va., for mailing and delivering, a certain poison, to wit, strychnine, with the design, intent, and purpose on the part of accused to hurt, harm, injure, and kill another person, to wit, George C. Jones. Held, that the indictment, which was in the words of the statute, was sufficient to apprise accused fully and plainly of the nature of the offense for which he was indicted; it being unnecessary to aver that the letter deposited for mailing was sent to any particular person, or at what point or post office it was addressed.

2. INDICTMENT AND INFORMATION ⊕⟹125(19)—SUFFICIENCY—DUPLICITY.

An indictment charging a violation of Criminal Code, § 217, which alleged that accused did deposit and cause to be deposited in the post office for mailing and delivery a poison, etc., is not duplicitous because of the allegation that accused did deposit and cause to be deposited such poison.

3. POST OFFICE ⊕⟹49—OFFENSES—EVIDENCE—SUFFICIENCY.

In a prosecution under Criminal Code, § 217, for depositing and causing to be deposited in the post office for mailing a poison with the intent to kill another, evidence held sufficient to support a conviction.

4. CRIMINAL LAW ⊕⟹458—OPINION EVIDENCE—HANDWRITING—COMPETENCY OF WITNESS.

Any one who is familiar with a person's handwriting from having seen him write, though only once, is competent as a nonexpert to give his opinion as to the genuineness of a signature; and hence witnesses who had seen the writing of defendant, who was charged with depositing and causing to be deposited in the post office a letter containing poison, etc., are competent to testify that the writing and signature was that of accused.

5. POST OFFICE ⊕⟹49—OFFENSES—EVIDENCE—SUFFICIENCY.

In a prosecution for depositing and causing to be deposited in a post office a poison for mailing with intent to kill another, evidence held to show that the poison mentioned by an expert witness for the prosecution was that deposited in the post office.

6. WITNESSES ⊕⟹372(2)—INTEREST AND BIAS—SHOWING.

Accused was charged with depositing and causing to be deposited in the post office for mailing a letter containing poison. It appeared that the letter was addressed to "Mrs. C. G. Cornell," and one Jones, who received and opened the letter, testified that his wife frequently received letters addressed in that manner. The letter itself was addressed to "Mrs. Dollie Jones," and urged her to use the inclosed poison to kill her husband, so that she and the writer could live together. Held, that as, after her husband intercepted the letter, Mrs. Jones left him and went to live with accused, questions as to whether she was in love with accused and had been intimate with him were not objectionable.

---

⊕⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Southern District of West Virginia, at Charleston; Benjamin F. Keller, Judge.

Charles P. Murray was convicted of a violation of Criminal Code, § 217, for having deposited and caused to be deposited in the Post Office for mailing a poison with the design and intent to injure and kill another, and he brings error. Affirmed.

B. J. Pettigrew, E. E. Robertson, and Jas. B. Menager, all of Charleston, W. Va., for plaintiff in error.

Wm. G. Barnhart, U. S. Atty., of Charleston, W. Va., and Wm. E. Ross, Asst. U. S. Atty., of Bluefield, W. Va.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

PRITCHARD, Circuit Judge. The plaintiff in error, defendant below, was indicted, tried, and convicted in the District Court of the United States for the Southern District of West Virginia for an alleged violation of section 217 of the Criminal Code of the United States. That portion of the indictment which is material charges the defendant with having—

"* * * * deposited and caused to be deposited, in a post office of the United States, to wit, the post office of the United States at Charleston, in the state of West Virginia, * * * for mailing and delivering a certain poison, to wit, strychnine, with the design, intent, and purpose upon the part of him, the said Charles P. Murray, to hurt, harm, injure and kill another person, to wit, George C. Jones."

[1] It is insisted by counsel for defendant that the indictment is insufficient, in that it does not apprise the defendant fully and plainly of the nature of the offense for which he is indicted. The defendant filed a demurrer, and also a motion to quash the indictment, which were overruled by the court below. We will therefore consider first the question as to whether the court below erred in overruling defendant's demurrer. The section under which defendant was indicted reads in part as follows:

"* * * * And whoever shall knowingly deposit, or cause to be deposited for mailing or delivery, or shall knowingly cause to be delivered by mail according to the direction thereon, or at any place to which it is directed to be delivered by the person to whom it is addressed, anything declared by this section to be nonmailable, whether transmitted in accordance with the rules and regulations authorized to be prescribed by the Postmaster General or not, with the design, intent, or purpose to kill, or in any wise hurt, harm, or injure another, or damage, deface, or otherwise injure the mails or other property, shall be fined not more than five thousand dollars, or imprisoned not more than ten years, or both."

It will be observed that the indictment is in the language of the statute in so far as the essential elements are concerned. It is true that it is not averred that the letter in question was sent to any particular person, nor does it appear at what point or post office it was addressed. There is nothing in the provision of the statute under which the defendant is indicted which places upon the government the burden of alleging and proving to whom the letter was addressed or at what particular post office it was addressed. It appears that the indictment was

drawn under the provisions of the statute which provides a penalty against "whoever shall knowingly deposit or cause to be deposited for mailing and delivery," and not under that provision which provides a penalty against one who "shall knowingly cause to be delivered by mail according to the direction thereof," etc. These provisions are separate and distinct; the first fixing a penalty against one who deposits or causes to be deposited, while the second provides a penalty against whoever delivers or causes to be delivered, etc.

[2] However, it is insisted by counsel for defendant that, while the indictment contains but one count, it embraces two separate and distinct offenses, "did deposit and cause to be deposited," "thereby constituting duplicity." This contention is without merit. In the case of United States v. James (D. C.) 74 Fed. 545, the fourth syllabus is as follows:

"An allegation that defendant 'did deposit, and cause to be deposited,' obscene matter in the mails, is not such duplicity as vitiates an indictment."

See Harvey v. United States, 126 Fed. 357, 61 C. C. A. 61; Bates v. United States (C. C.) 10 Fed. 92.

The foregoing decisions relate to cases where defendants were indicted under the statute which prohibits the sending of obscene matter through the mail. The language employed in that statute is the same as that of section 217. We have carefully considered every view of this phase of the question, and are of opinion that the refusal of the court below to sustain the demurrer to the indictment was eminently proper.

[3] We now come to a consideration of the merits of the case. It is insisted by counsel for defendant that there was no legal evidence connecting, or which tended to connect, the defendant with the crime charged in the indictment.

The government introduced George C. Jones as a witness, who, among other things, testified that he took the letter out of the post office which contained the poison; that it was addressed to "Mrs. C. G. Cornell, Dola, W. Va.," and that his wife frequently received letters addressed in this manner, the name "Cornell" being the name of her mother; that the letter was mailed at Charleston, W. Va., February 5, 1916. Witness further testified that he was familiar with the handwriting of the defendant "and that the handwriting contained in the letter and the signature was, he thought, the handwriting of the defendant"; that prior to September, 1915, witness, together with his wife, his daughter Ernestine, another daughter, and a small adopted son, at different times lived at Acme and Wakeforest, on Cabin creek, W. Va.; that the defendant frequently came to the home of witness, and at various times prior thereto there had been some trouble between defendant and witness.

E. R. Morgan, postmaster at Berlin, and bookkeeper for the Wyatt Coal Company, for which defendant worked, testified that he was familiar with the signature of defendant, and that in his judgment the signature attached to the letter in question was that of the defendant; that the Wyatt Coal Company was closed on February 5, 1916, the day on which the letter in question was mailed.

Defendant introduced in his own behalf Dollie Jones, who admitted that Murray had often addressed letters to her as "Mrs. C. G. Cornell." She further admitted that she had left her husband and gone to live with the defendant, and defendant admitted that he had left his wife and one small child and had gone to live with Dollie Jones. The defendant also admitted that the letter resembled his own handwriting. An unsigned letter and envelope addressed to the postmaster at Ono, W. Va., was handed to defendant, and he admitted that he had written the same.

Thus, in addition to the other facts and circumstances, all of which we think point unerringly to the guilt of the defendant, the jury had the admitted handwriting of defendant, which they compared with the letter in question. It further appears that, after Jones had shown his wife the letter and poison, she left him and took up her residence with the defendant.

[4] It is insisted by counsel for defendant that the court below erred in permitting the government witnesses to testify that the handwriting contained in the letter in question and the signature attached thereto, in their opinion, was the signature and handwriting of the defendant, inasmuch as neither of these witnesses qualified or attempted to qualify as experts. It should be borne in mind that these witnesses testified that they were familiar with the handwriting of the defendant, and were not, therefore, offered as experts. Underhill on Criminal Evidence (2d Ed.) § 429, in referring to this point says:

"Any one who is familiar with a person's writing from having seen him write, though only once, or, never having seen him write, from carrying on correspondence with him, or from opportunities afforded from frequently handling writing known to have been written by the person, is competent, as a nonexpert, to give his opinion as to the genuineness of his signature."

We think that under the circumstances the ruling of the court below was proper.

[5] It is also insisted that there was no evidence to show that the strychnine mentioned by Dr. Hubbard was the strychnine received by Jones. It appears from the testimony of Jones, as we have already stated, that he obtained the letter in question from the post office and that it contained a whitish-like powder in a small envelope; that he turned this over to Harry L. Conner, a post office inspector. This letter, which it was shown was in the handwriting of the defendant and signed by him, is in the following language:

"burn this at once

"Laing, W. Va., Feb. 5, 1916.

"Mrs. Dollie Jones, Dola, W. Va.—Dearest Dollie: I can not wait any longer, so inclosed is the stuff I said I would send you. Now give it to George the next time he has one of those spells, in a glass of water, and people will think he died in a fit; then my dear sweetheart you will be free and I will leave Minnie and we will go some where we are not known and go to housekeeping. Now, dear, do as you agreed to and all will be well. I will not write you any more until you do the work, and you must not write to me until you need me.

"From your true lover,

"Burn this.                                     C. P. Murray, Laing.

"P. S.—Will mail this from Charleston."

The contents of the small envelope were forwarded to the Post Office Department, at Washington, D. C., accompanied by a letter requesting that the Department take the contents of the envelope to the Bureau of Chemistry for analysis. Dr. Hubbard, who testified that he was an analytical chemist, stated that he was—

"employed by the United States government, as such chemist in the Bureau of Chemistry of the Agriculture Department of the United States, at Washington, D. C.; that, on May 12, 1916, he received a communication from the Post Office Department of the United States, inclosing copy of a letter from Post Office Inspector Conner to the Post Office Department, requesting an analysis of some powder inclosed in a small envelope, which small envelope witness produced and exhibited in evidence; that the quantity of the powder, when received by witness, was about one-third of a teaspoonful; that witness made an analysis of the same, and found same to contain three per cent. of strychnine; that the same was poison, and of a sufficient quantity to cause death, should the whole or even a part of same be administered to a human being. Witness further testified that the powder, analyzed by him, had not theretofore been in tablet form, for the reason that strychnine tablets are composed of strychnine and sugar of milk; whereas, the powder, analyzed by witness, was composed of strychnine and cornstarch."

We think this evidence is sufficient to show that the powder exhibited in court was the identical powder which had been received by Jones through the mail addressed to "Mrs. C. G. Cornell, Dola, W. Va." It clearly appears that, from the time Jones received the letter with the powdered contents until the same was delivered to the Bureau of Chemistry, the powdered contents were in the possession of Conner and the post office officials of the United States; that the letter and contents were forwarded by Conner to the Post Office Department, and that Dr. Hubbard received the powdered contents from the Post Office Department. Thus it appears that the envelope and its contents were not out of the custody of the post office officials until the same were delivered to the Bureau of Chemistry where Dr. Hubbard, as an employé, made the analysis.

[6] This disposes of all the questions raised, except the contention of defendant that it was improper to ask Dollie Jones as to whether she was in love with the defendant and had been intimate with him. In view of the crime with which defendant is charged and the relations that existed between Dollie Jones and himself, we think this question, tending as it did to show the interest of the witness and bias in favor of defendant, was material to the issue there being tried.

The evidence in this case clearly tends to show that the defendant and Dollie Jones devised a scheme by which they hoped to get rid of George C. Jones, and with that end in view the defendant forwarded to Dollie Jones the powder in question in an envelope addressed to "Mrs. C. G. Cornell." It appears that the defendant and Jones' wife began to live together as man and wife very soon after the letter in question was received, and this strongly corroborates the contention of the government that the powders were sent by the defendant with the view of having Jones' wife poison him and thus pave the way for their illicit intercourse. The improper conduct of the defendant and Dollie Jones after they had been thwarted in their attempt to kill Jones

was in defiance of the state law and in utter disregard of all rules of decency and proper living.

We think the defendant had a fair and impartial trial, and that his conduct merits the punishment provided by the statute.

Affirmed.