**Albert SMITH, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 308, 2005.**

Supreme Court of Delaware.

Submitted: May 3, 2006.
Decided: June 29, 2006.

---

Christopher D. Tease, Esquire, Wilmington, Delaware, for appellant.

Timothy J. Donovan, Jr., Department of Justice, Wilmington, Delaware, for appellee.

Before HOLLAND, BERGER and JACOBS, Justices.

HOLLAND, Justice.

This is the direct appeal of defendant-appellant, Albert Smith, from final judgments of conviction that were entered in the Superior Court. Smith was indicted on charges of Attempted Murder in the First Degree (two counts), Possession of a Firearm During the Commission of a Felony (two counts), and Attempted Robbery in the First Degree for an incident occurring on December 11, 2003. A jury returned verdicts of guilty on each count of the indictment.

In this appeal, Smith contends that the trial judge abused his discretion by admitting into evidence a letter purported to be written by Smith. We have concluded that Smith's argument is without merit. Accordingly, the judgments of the Superior Court must be affirmed.

### Facts

On December 11, 2003, the Delaware State Police and New Castle County Police Department were dispatched to the Claymont train station. They were responding to a 9-1-1 call regarding a robbery with shots fired. Prior to their arrival, one of the victims, Dustin Hare, called 9-1-1 and reported that he and his friend, Austin Dilks, were victims of an attempted robbery and that Dilks was shot in the back of the head.

The primary witness, Hare, was able to testify about the events leading up to the attempted robbery. Hare and Dilks were together that evening at the Brookview Townhome development in Clayton. When they left, Hare heard his name called as they were walking to Dilks' car. Hare identified the person who called his (Hare's) name as Albert Smith. Hare knew Smith from at Mount Pleasant High School in Claymont.

Smith and Keith Campbell approached Hare and Dilks and asked for a ride to the Claymont train station. Hare told Dilks that he knew Smith and that it was okay. Dilks, who owned the car, agreed to give Smith and Campbell a ride.

At the train station, Dilks pulled into the parking lot and proceeded toward the platform. Smith told Dilks to stop and let him out. Hare testified that when Dilks stopped, Hare turned around to shake hands with Smith and saw Smith holding a handgun to the back of Dilks head. According to Hare, Smith fired the gun as Hare attempted to push Dilks out of the way. Since the driver-side door was closed, his attempt was unsuccessful.

The testimony shows that Smith and Campbell attempted to take the car but since Dilks had not put the car in "park" the car rolled forward into a ditch. Smith and Campbell then fled on foot. Both defendants were identified by Hare and Dilks and were apprehended later that evening.

Campbell's testimony revealed additional circumstances that occurred that evening. Campbell pled guilty and was awaiting sentencing at the time of trial. He agreed to testify for the State in return for the plea agreement and a recommendation of leniency at his own penalty hearing.

Campbell testified that upon arrival at the station, the plan was to car-jack the

victims and take the car to commit a planned robbery. Campbell apparently was unaware that Smith was going to shoot Hare and Dilks. Campbell saw Smith take the gun from behind his back, point it at Dilks and fire.

### Letter from Smith

Prior to trial, the State announced its intention to introduce into evidence a letter that Smith had written to his friend, Carlton Alston, while Smith was in prison awaiting trial. The State planned to introduce the letter into evidence through the testimony of Alston. In the letter, Smith asked Alston to "take out" victims Dilks and Hare and to speak with co-defendant Campbell in order to convince Campbell to recant his statement to the police. At that point, Campbell had accepted the State's plea offer and was to testify at Smith's trial. In pertinent part, the letter stated the following:

Pod 1F

Cell # 6 (protective custody) Monday 7:21 p.m.

To: B.M.

From: Jonni Bang Bang

... Dustin knows me, I don't know Alston ...

Man when the time is right take him out correctly Jonni tried close range both niggaz if you can't get nothing bigger hit him in the throat or kneck behind da ear, when I had my turn I should not of done that shit, the way that went down was not normal,!! But we'll talk further in person, keep me updated on everything ...

But as the world turns I'll be here praying 4 for yall as long as the law ain't got da gun or da witness the case is beat!!!!!

Even if B-eazy said something wrong, Now,! when it come to trial he can simply take the stand and say he was scared so he told them what they wanted to hear, but, for now, KEEP IT GANGSTA, stay on da low and If y'all gonna hit something do it RIGHT!!

Defense counsel objected to the letter as evidence on the grounds that Alston's testimony would be insufficient to establish that the letter was, in fact, sent by Smith.

### Alston Identifies Letter

At the request of defense counsel, and outside the presence of the jury, a hearing was held to determine the authenticity of the letter. The State relied solely on Alston's testimony at the hearing. On direct examination, Alston testified that he received the letter from Smith at his home. In the letter, Smith identified himself by his nickname, "Bang-bang," and Alston by his nickname, "Banger." The letter also identified the other codefendant, Campbell, by his nickname, "Be Easy." Alston testified that he had known Smith for two or three years and had "hung out" with him in Brookview.

██ On cross-examination, Alston testified that after reading the letter, he left it in his bedroom. Alston testified that his mother found the letter in his room, and turned it over to the State.[1] Alston explained that he recognized the handwriting in the letter as Smith's because he had written out "rap songs" on two or three occasions with Smith. Alston could not specify when or where he had seen the other writings by Smith.

Following the *voir dire* examination of Alston, the trial judge ruled the letter was

---

1. Smith argues that since the letter was turned over to the police by Alston's mother, who found it in Alston's room, the chain of custody was not established. The trial judge properly ruled that Alston's testimony that the letter proffered in evidence was the one he received in the mail obviated the need to establish a chain of custody. *See Pottinger v. State,* 655 A.2d 308 (Del.).

admissible, relying on the testimony of Alston and noting the self-authenticating features in the letter:

> So we have a non-expert opinion of a lay person based on his familiarity with the defendant's handwriting, and we have internal communications in there that tend to self-authenticate the document as emanating from the defendant. So the objection as to authenticity is overruled.

Smith now argues on appeal that this ruling was erroneous.

### Authenticity of Evidence

▮ The authentication and identification of evidence is controlled by Delaware Uniform Rules of Evidence 901.[2] In general, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."[3] Subsection (b) of Rule 901 "[b]y way of illustration only, and not by way of limitation ... [lists] examples of authentication or identification conforming with the requirements of this rule."

▮ Three of those *separate* examples are pertinent in this appeal. Under D.R.E. 901(b)(1), one way to authenticate evidence is by offering the testimony of someone with knowledge that "a matter is what it is claimed to be." When the matter is a letter, D.R.E. 901(b)(2) states that that the letter can be authenticated by a "[n]on-expert opinion as to the genuineness of the handwriting, based upon familiarity not acquired for the purposes of the litigation." Under D.R.E. 901(b)(4) a matter can be authenticated by distinctive characteristics, such as "[a]ppearance, contents, substance, internal patterns or other distinctive characteristics, taken in conjunction with circumstances."

### Alston's Knowledge

Alston was a witness with knowledge. He had known Smith for "[l]ike, two or three years" and planned the liquor store robbery with Smith and Campbell on the day of the shooting. He was familiar with the nicknames "Bang-bang" (Smith), "Banger" (himself) and "Be Easy" (Campbell) used in the letter. He was familiar with Smith's handwriting, having seen him "[w]riting raps" in the past. The trial judge did not, however, specifically rely upon D.R.E. 901(b)(1) in ruling that the letter was admissible.

### Alston's Non–Expert Opinion

▮ Rule 701 governs lay witness opinion testimony generally and provides that such testimony must meet three requirements, only one of which is relevant here:

**2.** On appeal, for the first time, Smith contends that the trial judge applied the wrong standard in ruling upon the letter's authenticity. Smith argues that since the letter implicated him in the commission of another crime (criminal solicitation), D.R.E. 404(b) required the letter be authenticated by evidence that was "plain, clear and conclusive." *Renzi v. State*, 320 A.2d 711, 712 (Del.1974). *See also Getz v. State*, 538 A.2d 726, 734 (Del.1988). Since this claim was not raised in the Superior Court, it is reviewed for plain error. *Weber v. State*, 457 A.2d 674, 680 n. 7 (Del.1983). "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopard-ize the fairness and integrity of the trial process." *Wainwright v. State*, 504 A.2d 1096, 1100 (Del.1986). Plain error, however, assumes oversight. *Tucker v. State*, 564 A.2d 1110, 1118 (Del.1989). Here there was no oversight. The issue of the letter's authenticity was squarely addressed at trial. Smith had every opportunity to suggest to the trial judge that the D.R.E. 404(b) standard, rather than the D.R.E. 901 standard, should be used in ruling on the letter's admissibility. Since Smith failed to do so, this claim of error has been waived. *Tucker v. State*, 564 A.2d 1110 (Del.1989); *Weber v. State*, 457 A.2d at 684.

**3.** D.R.E. 901(a).

the testimony must be "rationally based on the perception of the witness."[4] Rule 901(b)(2) is a more specific rule, governing lay witness opinion testimony as it relates to the identification of handwriting. This rule requires that "[n]on-expert opinion [testimony] as to the genuineness of handwriting, [must be] based upon familiarity not acquired for purposes of the litigation."[5]

Smith contends that Alston's non-expert opinion on the origin of the letter and the handwriting was insufficient to authenticate the letter for admission into evidence. Rule 901 requires that the lay witness must have acquired the knowledge "under circumstances indicating their genuineness."[6] Seeing a person write is usually sufficient to establish the genuineness of the knowledge.[7]

■ Generally, there is no minimum number of observations of someone's handwriting required to constitute familiarity because the extent of the familiarity goes to the weight given to the testimony.[8] Nevertheless, there must be a minimum factual basis from which the knowledge of the handwriting was acquired.[9] Some courts have held that witnessing a person's handwriting on only one occasion is adequate.[10]

Alston testified that he was familiar with Smith's handwriting because he witnessed Smith write rap songs on several occasions. The Superior Court ruled that Alston had adequate familiarity. Watching someone write on several occasions establishes only minimal familiarity, but it is sufficient to prove the authenticity of the letter and then allow the jury to decide the weight to give to the testimony. Accordingly, we hold there was a sufficient factual basis to permit Alston, as a non-expert witness, to offer an opinion that the handwriting in the letter was Smith's.

### Letter's Distinct Contents

■ Independent of Alston's lay opinion, the distinctive content of the letter separately identified Smith as the author. Under D.R.E. 901(b)(4), a writing can be authenticated by distinctive characteristics. The rule does not specify a minimum number or minimum quality of distinct characteristics. Accordingly, courts have relied upon a variety of factors to authenticate such evidence. For example, documents that contain information and details that only those involved in the crime could know are considered reliable.[11]

4. D.R.E. 701(a).

5. D.R.E. 901(b)(2) (emphasis added).

6. *United States v. Standing Soldier*, 538 F.2d 196, 202 (8th Cir.1976).

7. 2 J. Strong, *McCormick on Evidence*, § 221, at 41 (4th ed. 1992) ("Adequate familiarity may be present if the witness has seen the person write. . . .").

8. *Rinker v. United States*, 151 F. 755, 758 (8th Cir.1907); *United States v. Binzel*, 907 F.2d 746, 749 (7th Cir.1990); *see also* 29A Am. Jur.2d *Evidence* § 1213.

9. *United States v. Mauchlin*, 670 F.2d 746, 749 (7th Cir.1982); *United States v. Gallagher*, 576 F.2d 1028, 1048 (3d Cir.1978); *United States v. Standing Soldier*, 538 F.2d 196, 202 (8th Cir.1976); *Ryan v. United States*, 384 F.2d 379, 380 (1st Cir.1967),

10. *See, e.g., Rogers v. Ritter*, 12 Wall. 317, 79 U.S. 317, 322, 20 L.Ed. 417 (1870) (one occasion would be sufficient); *Murray v. U.S.*, 247 F. 874, 878 (4th Cir.1917) (sufficient that witness observed writer on one occasion); *In re Goldberg*, 91 F.2d 996, 997 (2d Cir.1937) (sufficient that witness previously had observed three checks being signed); *In re Diggins' Estate*, 68 Vt. 198, 34 A. 696, 697 (1896) (one observation of writing 20 years earlier was sufficient).

11. *See United States v. Reyes*, 798 F.2d 380, 383 (10th Cir.1986); *United States v. Helmel*, 769 F.2d 1306, 1312 (8th Cir.1985); *United States v. Drougas*, 748 F.2d 8, 21 (1st Cir. 1984); *United States v. De Gudino*, 722 F.2d

 

In this case, the return address on the letter—"Pod 1F, Cell # 6 (Protective Custody)"—indicates it was sent by a prison inmate.[12] Smith was incarcerated at the time. The marginalia—"Dustin knows me. I don't know Alston"—is consistent with the testimony of these two witnesses. These facts support the State's contention that Smith wrote the letter.

The letter contained a number of indicia of authenticity. The letter used nicknames for the parties it referred to: "Jonni Bang–Bang" for Smith, "Banger" for Alston, and "B–Eazy" for Campbell. Alston was able to testify to the significance of these nicknames and why only someone who knew those involved could have known those nicknames. The letter includes references to the crime, as well as apparent regret by Smith that he was unable to kill the two victims at close range:

> Man when the time is right take him out correctly Jonni [referring to himself in the third person] tried close range both niggaz if you can't get nothing bigger hit him in the throat or kneck behind da ear, when I had my turn I should not of done that shit, the way that went down was not normal,!!

The use of nicknames and familiarity with the facts of the shooting are indications that Smith wrote the letter. As the trial judge observed when he ruled that the letter was admissible evidence, it was almost self-authenticating. We hold that the trial judge properly ruled the letter was authenticated by the non-expert handwriting opinion of Alston and the self-authenticating, distinctive nature of its contents.[13]

1351, 1355 (7th Cir.1983); *United States v. Wake*, 948 F.2d 1422, 1434 (5th Cir.1991).

**12.** *See Garden v. State*, 815 A.2d 327, 336 (Del.2003).

### *Conclusion*

The judgments of the Superior Court are affirmed.