Tiffany PARKER, Defendant
Below–Appellant,

v.

STATE of Delaware, Plaintiff
Below–Appellee.

No. 38, 2013.

Supreme Court of Delaware.

Submitted: Nov. 6, 2013.

Decided: Feb. 5, 2014.

Santino Ceccotti, Esquire, of Wilmington, Delaware, for Appellant.

Andrew J. Vella, Esquire, of the Department of Justice, Wilmington, Delaware, for Appellee.

Before HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, and NOBLE, Vice Chancellor, constituting the Court en banc.

RIDGELY, Justice:

Defendant-below/Appellant, Tiffany Parker, appeals from a Superior Court jury conviction of Assault Second Degree. Parker claims that the Superior Court erred in admitting statements posted on her Fa-

cebook profile. The Superior Court admitted the evidence under Rule 901 of the Delaware Rules of Evidence. Parker argues that we should adopt the rule set forth in *Griffin v. State*, a Maryland Court of Appeals decision, to authenticate social media evidence. Under the Maryland approach, social media evidence may only be authenticated through the testimony of the creator, documentation of the internet history or hard drive of the purported creator's computer, or information obtained directly from the social networking site. Unless the proponent can demonstrate the authenticity of the social media post to the trial judge using these exacting requirements, the social media evidence will not be admitted and the jury cannot use it in their factual determination. Under this approach, social media evidence is only authenticated and admissible where the proponent can convince the trial judge that the social media post was not falsified or created by another user.

Conversely, the State advocates for the Texas approach, under which a proponent can authenticate social media evidence using any type of evidence so long as he or she can demonstrate to the trial judge that a jury could reasonably find that the proffered evidence is authentic. The Texas approach involves a lower hurdle than the Maryland approach, because it is for the jury—not the trial judge—to resolve issues of fact, especially where the opposing party wishes to challenge the authenticity of the social media evidence.

The Superior Court adopted the Texas approach and found that Parker's social media post was sufficiently authenticated by circumstantial evidence and by testimony explaining how the post was obtained. On appeal, Parker claims that social media evidence requires greater scrutiny than other evidence and should not be admitted unless the trial judge is convinced that the

evidence has not been falsified. We disagree. We conclude that the Texas approach better conforms to the requirements of Rule 104 and Rule 901 of the Delaware Rules of Evidence, under which the jury ultimately must decide the authenticity of social media evidence. A trial judge may admit a relevant social media post where the proponent provides evidence sufficient to support a finding by a reasonable juror that the proffered evidence is what the proponent claims it to be. We find no abuse of discretion by the trial court in admitting the social media evidence in accordance with the Delaware Rules of Evidence. Accordingly, we affirm.

### *Facts and Procedural History*

On December 2, 2011, Tiffany Parker and Sheniya Brown were engaged in a physical altercation on Clifford Brown Walk in the City of Wilmington. The disagreement was over Facebook messages regarding a mutual love interest. Felicia Johnson was driving by when she observed the confrontation and later testified that Parker appeared to be "getting the best of the pregnant girl [Brown]." Bystanders eventually separated the two, but the fight resumed when Brown returned with a knife. Bystanders again intervened, and shortly thereafter officers from the Wilmington Police Department separated the women.

Parker was indicted on one count of Assault Second Degree and one count of Terroristic Threatening. Parker argued that her actions were justified because she was acting in self-defense. The State sought to introduce Facebook entries that were allegedly authored by Parker after the altercation to demonstrate her role in the incident and discredit Parker's self-defense argument. The Facebook entries originated from Parker's Facebook account and stated:

bet tht [sic] bitch didnt [sic] think [I] was going to see her ass … bet she wont [sic] inbox me no more, # caught-thatbitch

….

… [ctfu]. this girl is crazy. she really got these ppl [sic] thinkin [sic] that [I] was on some nut shit … first of all she hit me first … if you really want to put it out there since you shared i … See more

… [I] told you go head [sic] and you inboxed [sic] me back still being disrespectful … [I] told you say no more [sic] … [I] seen [sic] you today … we said our words you put your hands on me … [I] hit you back. WE [sic] … See more [1]

The State's exhibit depicting Parker's Facebook posts also included her picture, the name "Tiffanni Parker," and a time stamp for each entry, stating that they were posted on December 2, 2011.[2] Brown "shared," or reposted, this Facebook post on her own Facebook page.

The State used testimony from Brown, as well as circumstantial evidence, to authenticate the Facebook entries. Over Parker's objection, the trial court admitted the Facebook post into evidence, finding that the State had sufficiently authenticated it. The court noted that there was ample Delaware case law that relied upon distinguishing characteristics to appropriately authenticate emails and handwritten letters.[3] As a result, Brown's testimony explaining how she viewed and shared Parker's post and the post itself, which contained distinctive circumstances or characteristics, satisfied Rule 901's authentication requirements. The trial court concluded that "[a]ny further inquiry was for the jury to decide." [4]

The jury acquitted Parker of the Terroristic Threatening charge and convicted her of Assault Second Degree. This appeal followed.

### Discussion

We review a trial judge's evidentiary rulings for abuse of discretion.[5] "An abuse of discretion occurs when a court has … exceeded the bounds of reason in view of the circumstances, [or] … so ignored recognized rules of law or practice … to produce injustice." [6]

Under the Delaware Rules of Evidence, "[a]ll relevant evidence is admissible, except as otherwise provided," and "[e]vidence which is not relevant is not admissible." [7] All preliminary questions related to the admissibility of evidence are determined under Rule 104 by the trial judge.[8]

---

1. State's Exhibit 5, *State v. Parker*, No. 01112001354 (Del.Super.Ct.2012).

2. *Id.*

3. *State v. Parker*, No. 1112001354, mem. op. at 4 (Del.Super.Ct. Oct. 9, 2012).

4. *Id.* at 5.

5. *Manna v. State*, 945 A.2d 1149, 1153 (Del. 2008) (citing *Pope v. State*, 632 A.2d 73, 78–79 (Del.1993)).

6. *Culp v. State*, 766 A.2d 486, 489 (Del.2001) (alteration in original) (omissions in original) (internal quotation marks omitted) (quoting

*Lilly v. State*, 649 A.2d 1055, 1059 (Del. 1994)).

7. D.R.E. 402.

8. Rule 104(a) provides:

Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of paragraph (b) of this rule. In making its determination it is not bound by the rules of evidence except those with respect to privileges.

D.R.E. 104(a).

But where "the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or in the court's discretion subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."[9] Nonetheless, where evidence is admitted, a party may introduce additional relevant evidence to support or discount its weight or credibility.[10]

By their nature, social media posts and other similar electronic communications are creatures of, and exist on, the Internet. Rule 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."[11] Rule 901(b) provides examples of authentication that comply with the rule. In relevant part, authentication of social media evidence can include: (1) testimony from a witness who states that the evidence is what it is claimed to be,[12] (2) distinctive characteristics of the evidence itself, such as "[a]ppearance, contents, substance, internal patterns or other distinctive characteristics, taken in conjunction with circumstances," that can authenticate the documentary evidence,[13] or (3) evidence that shows that the documentary evidence is accurately produced through a process or system.[14] These are not the exclusive ways to authenticate social media posts.[15]

### Social Media Evidence Defined

Social media has been defined as "forms of electronic communications ... through which users create online communities to share information, ideas, personal messages, and other content (as videos)."[16] Through these sites, users can create a personal profile, which usually includes the user's name, location, and often a picture of the user.[17] On many sites such as Facebook or Twitter, a user will post content—which can include text, pictures, or videos—to that user's profile page delivering it to the author's subscribers.[18] Often these posts will include relevant evidence for a trial, including party admissions, inculpatory or exculpatory photos, or online communication between users. But there is a genuine concern that such evidence could be faked or forged, leading some courts to impose a high bar for the admis-

9. D.R.E. 104(b).

10. Rule 104(e) provides: "This rule does not limit the right of a party to introduce before the jury evidence relevant to weight or credibility." D.R.E. 104(e).

11. D.R.E. 901(a).

12. D.R.E. 901(b)(1).

13. D.R.E. 901(b)(4).

14. D.R.E. 901(b)(9).

15. See D.R.E. 901(b) (providing that the "examples of authentication or identification" listed in Rule 901(b) are "[b]y way of illustration only, and not by way of limitation").

16. Honorable Paul W. Grimm et al., Authentication of Social Media Evidence, 36 Am. J. Trial Advoc. 433, 434 (2013) (quoting Definition of Social Media, Merriam–Webster, http://www.merriam-webster.com/dictionary/social%20media (last visited Feb. 5, 2014)).

17. See danah m. boyd & Nicole B. Ellison, Social Network Sites: Definition, History, and Scholarship, 13 J. Computer–Mediated Comm. 210, 213 (2007). Relatedly, many users also create fake user profiles. See Katharina Krombholz et al., Fake Identities in Social Media: A Case Study on the Sustainability of the Facebook Business Model, 4 J. Service Sci. Res. 175, 177 (2012) (noting that five to six percent of registered Facebook accounts are fake accounts).

18. See Grimm et al., supra, at 435.

sibility of such social media evidence.[19] Other courts have applied a more traditional standard, "determining the admissibility of social media evidence based on whether there was sufficient evidence of authenticity for a reasonable jury to conclude that the evidence was authentic."[20] This approach recognizes that the risk of forgery exists with any evidence and the rules provide for the jury to ultimately resolve issues of fact.

### The Maryland Approach

The higher standard for social media authentication is best exemplified by the Maryland Court of Appeals' decision in *Griffin v. State*. There, the state sought to introduce a post from the MySpace profile of Jessica Barber, the defendant's girlfriend, stating, "snitches get stitches."[21] In order to prove that the post was written by Barber, the state sought to authenticate the evidence using the picture of Barber, coupled with her birth date and location, displayed on her MySpace profile.[22] The state did not ask Barber to authenticate the page on the stand or introduce electronic records definitively showing that Barber had authored the post.

The Maryland Court of Appeals held that the state failed to properly authenticate Barber's post and thus did not adequately link both the profile and the "snitches get stitches" posting to Barber.[23] As the Court explained, the trial court "failed to acknowledge the possibility or likelihood that another user could have created the profile in issue or authored the 'snitches get stitches' posting."[24] Thus, to properly authenticate similar social media posts, the Court held that the admitting party should either (1) ask the purported creator if she created the profile and the post, (2) search the internet history and hard drive of the purported creator's computer "to determine whether that computer was used to originate the social networking profile and posting in question," or (3) obtain information directly from the social networking site to establish the appropriate creator and link the posting in question to the person who initiated it.[25] Several courts have followed the reasoning of *Griffin* out of the concern that social media evidence could be a fake, a digital alteration of an alleged creator's profile, or a posting by another using the alleged creator's profile.[26]

### The Texas Approach

The alternative line of cases is best represented by a Court of Criminal Appeals of Texas case, *Tienda v. State.*[27] In *Tienda*, the state introduced into evidence the names and account information associated with three MySpace profiles that tended to indicate the defendant's knowledge of or

---

**19.** *E.g., Griffin v. State*, 419 Md. 343, 19 A.3d 415, 423 (2011); *see also* Grimm et al., *supra*, at 441–54 (collecting cases).

**20.** Grimm et al., *supra*, at 441.

**21.** *Griffin*, 19 A.3d at 418, 423.

**22.** *Id.* at 418–19, 424.

**23.** *Id.* at 423.

**24.** *Id.* at 423 (quoting *Griffin v. State*, 192 Md.App. 518, 995 A.2d 791, 806 (2010), *rev'd*, 419 Md. 343, 19 A.3d 415 (2011)).

**25.** *Id.* 427–28.

**26.** *E.g., St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F.Supp.2d 773, 774 (S.D.Tex.1999); *People v. Beckley*, 185 Cal.App.4th 509, 110 Cal.Rptr.3d 362, 367 (2010); *State v. Eleck*, 130 Conn.App. 632, 23 A.3d 818, 825 (2011); *Commonwealth v. Williams*, 456 Mass. 857, 926 N.E.2d 1162, 1172–73 (2010).

**27.** 358 S.W.3d 633 (Tex.Crim.App.2012).

responsibility for a murder.[28] Several of the posts complained about the author's electronic monitor, which the defendant wore prior to trial.[29] On appeal, the defendant argued that the state did not properly authenticate the MySpace profile or the individual posts to attribute them to the defendant. The Court explained that "the best or most appropriate method for authenticating electronic evidence will often depend upon the nature of the evidence and the circumstances of the particular case."[30] This could include "direct testimony from a witness with personal knowledge, . . . comparison with other authenticated evidence, or . . . circumstantial evidence."[31] And rather than imposing a requirement that the proponent prove that the social media evidence was not fraudulent, the Texas Court explained that the standard for determining admissibility is whether "a jury could reasonably find [the] proffered evidence authentic."[32]

Ultimately, the Texas Court found that the state had sufficiently authenticated the defendant's MySpace posts and pictures. The Court explained that the combination of facts—including photos, contextual references to the defendant's life, and the posts about his ankle monitor—was circumstantial evidence "sufficient to support a finding by a rational jury that the MySpace pages that the State offered into evidence were created by the [defendant]."[33] Further, the Court explained that it was the province of the jury to assess and weigh the evidence presented by the state to determine whether it was the defendant, rather than some unidentified conspirators or fraudsters, who created and maintained the MySpace pages.[34] Courts in Arizona and New York have followed the rationale of *Tienda v. State.*[35] The premise of the Texas approach is that the jury—and not the trial judge—ultimately resolves any factual issue on the authentication of social media evidence.

### The Jury Should Make the Ultimate Finding on Social Media Evidence

We conclude that social media evidence should be subject to the same authentication requirements under the Delaware Rules of Evidence Rule 901(b) as any other evidence. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."[36] Although we are mindful of the concern that social media evidence could be falsified, the existing Rules of Evidence provide an appropriate framework for determining admissibility. Where a proponent seeks to introduce social media evidence, he or she may use any form of verification available under Rule 901—including witness testimony, corroborative circumstances, distinctive character-

---

28. *Tienda,* 358 S.W.3d at 635.

29. *Id.* at 636.

30. *Id.* at 639.

31. *Id.* at 638.

32. *Id.*

33. *Id.* at 645.

34. *Id.* at 646.

35. *E.g., State v. Assi,* 2012 WL 3580488, at *3 (Ariz.Ct.App. Aug. 21, 2012); *People v. Valdez,* 201 Cal.App.4th 1429, 135 Cal.Rptr.3d 628, 633 (2011); *People v. Clevenstine,* 68 A.D.3d 1448, 891 N.Y.S.2d 511, 514 (2009). Notably, this approach has been praised by Judge Paul Grimm, District Court Judge for the District of Maryland, and his colleagues in their recent article, *Authentication of Social Media Evidence. See generally* Grimm et al., *supra.*

36. D.R.E. 901(a).

istics, or descriptions and explanations of the technical process or system that generated the evidence in question—to authenticate a social media post. Thus, the trial judge as the gatekeeper of evidence may admit the social media post when there is evidence "sufficient to support a finding" by a reasonable juror that the proffered evidence is what its proponent claims it to be.[37] This is a preliminary question for the trial judge to decide under Rule 104. If the Judge answers that question in the affirmative, the jury will then decide whether to accept or reject the evidence.[38]

### No Abuse of Discretion in Admitting Parker's Facebook Post

■ Applying this rule to the proceeding below, the trial court did not abuse its discretion when it admitted Parker's Facebook posts. The trial court specifically rejected the Maryland approach and adopted the Texas rule.[39] At trial, the court explained that Delaware follows the "distinguishing characteristics" rationale, noting that Delaware courts have authenticated handwritten letters from inside prison based on the nicknames of the parties involved and references to the crimes.[40] The trial court further noted that the Court of Chancery has authenticated an email through distinctive characteristics using only the sender's email address.[41] As a result, the trial court concluded that the State had adequately authenticated Parker's social media post using witness testimony and circumstantial evidence.[42]

Having applied the same rule of law that we validate today, we agree with the trial court that the post was sufficiently authenticated in accordance with Rules 104 and 901. First, the substance of the Facebook post referenced the altercation that occurred between Parker and Brown. Although the post does not mention Brown by name, it was created on the same day after the altercation and referenced a fight with another woman. Second, Brown's testimony provided further authenticating evidence. Brown testified that she viewed Parker's post through a mutual friend. Thereafter, Brown "shared" the post and published it on her own Facebook page. Collectively, this evidence was sufficient for the trial court to find that a reasonable juror could determine that the proffered evidence was authentic.[43] The trial court did not abuse its discretion in admitting Parker's Facebook post.

### Conclusion

The judgment of the Superior Court is **AFFIRMED.**

37.  Grimm et al., *supra*, at 457 (citing *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 542 (D.Md.2007)).

38.  D.R.E. 901(a); *see also* Grimm et al., *supra*, at 455–56.

39.  *Parker*, mem. op. at 4–5.

40.  *Id.* (citing *Smith v. State*, 902 A.2d 1119, 1125 (Del.2006)).

41.  *Id.* mem. op. at 5 (citing *Paron Capital Mgmt., LLC v. Crombie*, 2012 WL 214777, at *2 (Del.Ch. Jan. 24, 2012)).

42.  D.R.E. 901(b)(4).

43.  Although not explicitly considered by the trial court, we note that the proffered evidence was a print out of the Facebook page that displayed a photo of Parker and listed "Tiffanni Parker" as the content's creator. While a photo and a profile name alone may not always be sufficient evidence to satisfy the requirements of Rule 901, they are certainly factors that the trial court may consider.