## IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | Case No. 1702009447 |
| | ) | |
| JUSTIN HAYES, | ) | |
| | ) | |
| Defendant | ) | |

Jillian Schroder, Esquire
Deputy Attorney General
820 N. French Street, 7th Floor
Wilmington, DE 19801
*Attorney for the State of Delaware*

Benjamin Gifford, Esquire
Law Office of Benjamin S. Gifford
14 Ashley Place
Wilmington, DE 19804
*Attorney for Defendant*

## LETTER OPINION AND DECISION AFTER TRIAL

1.　　The defendant, Justin Hayes (hereinafter the "Defendant"), stands charged with Harassment and Violation of a Protective Order. A non-jury trial was convened on June 12, 2017, at the conclusion of which the Court reserved decision. This is the Court's decision after trial.

2.　　At trial, the Court heard testimony from Kathleen Eldridge ("Dr. Eldridge"), John Donnelly ("Dr. Donnelly"), Colleen Durkin ("Ms. Durkin"), and Corporal Thomas Lukach of Delaware State Police Troop 6 ("Corporal Lukach"). The Court also received documentary evidence and the Defendant's prior recorded statement. The Court, in its sole duty as the trier of fact,[1] finds the relevant facts as follows.[2]

---

[1] In this capacity, the Court has made determinations of credibility based upon the demeanor of the witnesses, their apparent fairness in giving their testimony, their opportunities to hear and know the facts about which they testified, and any bias or interest that they may have concerning the nature of the case. *See State v. Westfall*, 2008 WL 2855030, at *3 (Del. Com. Pl. Apr. 22, 2008).

[2] For the sake of brevity and clarity, the Court will limit its recitation to the facts of greatest relevance.

3.      The Defendant and Dr. Eldridge had previously engaged in a romantic relationship. During the course of that relationship, Dr. Eldridge sent the Defendant a picture of herself topless. After the relationship ended, the Defendant became angry and, in December of 2016, posted a scathing review of Dr. Eldridge on the Christiana Care Internal Medicine Residency Facebook group (the "Christiana Facebook group").[3] Dr. Eldridge sought and obtained an Order of Protection From Abuse (the "PFA"), which was granted on January 6, 2017. The PFA included, *inter alia*, a clause prohibiting the Defendant from contacting Dr. Eldridge and from mentioning Dr. Eldridge on all social media.

4.      On February 7, 2017, the Defendant sent a message to the Christiana Facebook group containing the topless picture of Dr. Eldridge.[4] The message was seen by Dr. Donnelly, who contacted Dr. Eldridge about the photograph after recognizing the Defendant's name and profile picture from the prior post on the Christiana Facebook group. Dr. Eldridge confirmed the photograph was the picture she had previously sent to the Defendant and that she had not sent that photograph to any other person.[5]

5.      In the Defendant's recorded interview, the Defendant admitted to posting the first scathing review of Dr. Eldridge on the Christiana Facebook group. The Defendant claimed he was very upset, as he had recently been fired and was then dumped by Dr. Eldridge. He went into a deep depression, started drinking, and eventually attempted to commit suicide. The

---

[3] The Court has only considered this evidence for the limited purpose of determining the admissibility of additional evidence. The Court has not considered this prior event in determining the guilt or innocence of the Defendant.

[4] The Court admitted a screenshot of the message over objection by the Defendant. The Court finds there are sufficient corroborative circumstances, particularly in the form of the Defendant's prior post on the Christiana Facebook group, to authenticate the social media evidence. "Where a proponent seeks to introduce social media evidence, he or she may use any form of verification available under Rule 901—including witness testimony, corroborative circumstances, distinctive characteristics, or descriptions and explanations of the technical process or system that generated the evidence in question—to authenticate a social media post. Thus, the trial judge as the gatekeeper of evidence may admit the social media post when there is evidence "sufficient to support a finding" by a reasonable juror that the proffered evidence is what its proponent claims it to be." *Parker v. State*, 85 A.3d 682, 687-88 (Del. 2014).

[5] The picture clearly showed unique tattoos on Dr. Eldridge's breast and sides, including a rose tattoo prominently surrounding Dr. Eldridge's nipple.

2

Defendant initially did not recall receiving the naked photograph from Dr. Eldridge; the Defendant was significantly evasive and forgetful on this topic.

6. Later in the interview, the Defendant admitted to receiving the photograph, but could not recall any unique identifying marks. The Defendant did not remember if Dr. Eldridge had any tattoos and, if she did, the Defendant could not remember where they were located or what they looked like. Specifically, the Defendant claimed he did not recall Dr. Eldridge as having a rose tattoo encircling her nipple. Furthermore, the Defendant did not recall sending the photograph to the Christiana Facebook group and, if he did, he did not mean to do so. The Defendant was significantly evasive and "forgetful" throughout the entirety of the recorded interview, even when the interviewing officer made specific references to Dr. Eldridge's tattoos. The Court finds the defendant to be wholly without credibility.

7. In an Information dated March 21, 2017, the Defendant was charged with Harassment, in violation of Title 11, Section 1311(a)(2) of the Delaware Code, on the theory that the Defendant, with the intent to harass, annoy, or alarm, communicated with Dr. Eldridge in a manner which he knew was likely to cause annoyance or alarm. The Defendant was also charged with Violation of a Protective Order, in violation of Title 10, Section 1046(e) of the Delaware Code, for sending a naked photograph of Dr. Eldridge to the Christiana Facebook group after being Court-ordered not to mention Dr. Eldridge on social media, pursuant to PFA Order number 0097003.

8. In order to find the Defendant guilty of Harassment, the State must prove beyond a reasonable doubt that the Defendant communicated with Dr. Eldridge in a manner that the Defendant knew was likely to cause annoyance or alarm and that he did so with the intent to harass, annoy, or alarm. To find the Defendant guilty of Violation of a Protective Order, the

3

State must prove beyond a reasonable doubt that a protective order was in effect and that the Defendant violated that order.

9.     The Defendant argued, *inter alia*, that the State has failed to prove that the Defendant communicated with Dr. Eldridge. The Defendant argues the evidence, if believed, would only establish that the Defendant sent a message to the Christiana Facebook group and that the message was only viewed and viewable by a limited class of administrators, consisting of one or two individuals.

10.    The Court finds that the Delaware Harassment statute is violated when a defendant sends messages to the Facebook group managed by the intended victim's employer, and does so with intent to harass, alarm, or annoy.[6] The Defendant intentionally directed a communication at a Facebook group belonging to Dr. Eldridge's employers and administrated by Dr. Eldridge's coworkers. The Court finds the Defendant's purpose was a vindictive one, with the manifest intent to harass, annoy, and alarm Dr. Eldridge by disseminating a compromising picture to her coworkers. The Defendant sent the picture knowing, and intending, that his doing so would cause Dr. Eldridge annoyance and alarm.

11.    Next, the Court is satisfied that the State has met its burden with respect to the charge of Violation of a Protective Order. The Court finds the Defendant communicated with

---

[6] Several states have addressed the issue of whether harassment requires direct communication, as opposed to communication through a third-party. The Court recognizes that many of the opinions from other jurisdictions are dependent upon statutory language that is not present in the Delaware Harassment statute. Accordingly, the Court will afford these cases appropriate persuasive weight. In California, communication between a defendant and a victim may occur even though the precise message was passed on through an intermediary, so long as the defendant intends the third party to pass on the message. *See California v. Alvarado*, 2016 WL 865667, at *3 (Cal. Ct. App. Mar. 7, 2016). Likewise, in Massachusetts, a communication may be made "by a third party to the defendant's intended victim. In such instances, however, [the State] must prove . . . that the defendant intended to communicate . . . to the third party who acts as intermediary." *Massachusetts v. Troy T.*, 766 N.E.2d 519, 524 (Mass. App. Ct. 2002). In Arizona, a conviction for harassment was upheld because the defendant "intended to harass the victim by 'caus[ing] a communication' with, and 'directed at,' the victim[.]" In that case, the defendant communicated with a security guard and the property managers at the victim's workplace in violation of an injunction prohibiting the defendant from going near the workplace or contacting the victim directly or indirectly; the court found such conduct to constitute communicating with the victim. *See Arizona v. Sebba*, 2012 WL 209751, at *7 (Az. Ct. App. Jan. 24, 2012).

4

Dr. Eldridge via Facebook, in spite of the prohibition contained within the PFA that he "not contact or attempt to contact [Dr. Eldridge] in any way," and that he "refrain from mentioning [Dr. Eldridge] on all social media."

12. For the foregoing reasons, the Court finds the Defendant **GUILTY** of Harassment and **GUILTY** of Violation of a Protection Order.

_____
Robert H. Surles
Judge

Date: July 25, 2017

cc:     Diane Healy, Judicial Case Management Supervisor

5